**David DAVENPORT, Appellant,**

v.

**RIVERVIEW GARDENS SCHOOL DISTRICT, A Six Director School District, Appellee.**

No. 93–2032.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1993.

Decided July 7, 1994.

---

William P. Russell, St. Louis, MO, argued, for appellant.

Clifford Alan Godiner, St. Louis, MO, argued (Thomas E. Tueth, on the brief), for appellee.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

McMILLIAN, Circuit Judge.

Plaintiff David Davenport appeals from a final judgment entered in the United States District Court[1] for the Eastern District of Missouri granting summary judgment in favor of defendant Riverview Gardens School District. *Davenport v. Riverview Gardens School Dist.*, No. 4:92CV173, 1993 WL 735793 (E.D.Mo. Jan. 14, 1993). For reversal, plaintiff argues that the district court (1) erred in granting summary judgment to defendant on his Title VII race discrimination claim, (2) abused its discretion in denying plaintiff's motion to amend the first amended complaint, and (3) abused its discretion in granting defendant's motion for sanctions. For the reasons discussed below, we affirm the judgment of the district court.

## I. Background

Plaintiff, an African–American male, was employed by defendant as a probationary[2] middle school physical education teacher and coach of the freshmen boys' basketball team for four school years from August 1986 to June 1990. Plaintiff also directed the intramural sports program and taught sex and health education during his employment with defendant. During the summer of 1988, plaintiff applied for the position of varsity baseball coach. The position was given to a white male. Defendant offered plaintiff the position of assistant baseball coach, which he declined. During plaintiff's last year of employment, 1989–90, plaintiff was notified by letter from the school superintendent that his contract would not be renewed for the 1990–91 school year for the following reasons: (1) he displayed poor sportsmanship when he "ran up" his team's basketball score against another school, and then was insubordinate

---

1. The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

2. Teachers who have taught less than five years are considered "probationary" teachers.

when his superiors attempted to discuss the matter with him; (2) after an "away" basketball game, he gave permission to some of his players to stay at the "away" school, in violation of a school policy; (3) at a meeting with the middle school principal and other physical education teachers, plaintiff displayed an adversarial and confrontational attitude toward the principal; and (4) he allowed two students to watch an intramural basketball game despite a school rule prohibiting spectators at intramural events.[3]

In January of 1992, plaintiff brought this action in federal court alleging that defendant, by failing to renew his contract, unlawfully discriminated against him on account of his race, in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. §§ 1981 and 1983. The district court found the original complaint facially defective and ordered plaintiff to amend the complaint. Plaintiff filed a first amended complaint alleging three causes of action: (1) discriminatory discharge, (2) discriminatory denial of the head baseball coach position, and (3) conspiracy to deny plaintiff his civil rights. In October of 1992, defendant filed a motion to dismiss on grounds that the first amended complaint did not comply with the court's previous order; defendant also moved to compel discovery and requested sanctions. On December 4, 1992, defendant filed a motion for summary judgment. By order dated December 14, 1992, the district court dismissed the second and third counts of the first amended complaint without prejudice, leaving only plaintiff's Title VII discriminatory discharge claim remaining.[4] The district court also ordered that any future motions for leave to amend the complaint be in writing and meet certain requirements.[5] Finally, the district court ordered plaintiff to pay a portion of defendant's attorneys' fees and

costs associated with the motion to dismiss and the motion to compel discovery, which the district court also granted. *Davenport v. Riverview Gardens School Dist.,* No. 4:92CV173 (E.D.Mo. Dec. 14, 1992).

A bench trial on plaintiff's discriminatory discharge claim was set for January 19, 1993. On January 6, 1993, less than two weeks before trial, plaintiff moved for leave to amend the first amended complaint. By order dated January 14, 1993, the district court denied plaintiff's motion for leave to amend and granted defendant's outstanding motion for summary judgment because plaintiff had failed to come forward with evidence from which a reasonable factfinder could infer unlawful discrimination. *Id.* (Jan. 14, 1993).

Plaintiff filed a motion for reconsideration, which was denied. Plaintiff then timely noticed this appeal. The notice of appeal stated that plaintiff was appealing from the "order [of the district court] granting summary judgment entered on January 14, 1993." The notice of appeal did not specifically identify the district court's denial of plaintiff's motion for leave to amend the complaint or the district court's imposition of discovery-related sanctions as distinct issues on appeal.

## II. Discussion

Plaintiff asserts three arguments on appeal. First, plaintiff argues that the district court erred in granting summary judgment on his Title VII claim of discriminatory discharge because he established a prima facie case of intentional employment discrimination and presented sufficient evidence to create a genuine dispute on the issue of pretext. Second, plaintiff contends that the district court abused its discretion in denying his motion for leave to amend the first amended

3. Defendant alleges that, after the "away" basketball game, the school received complaints about the unsupervised boys' conduct at a girls' basketball game, and that after the intramural game, one or both of the student spectators attacked and injured another student.

4. As to plaintiff's Title VII discriminatory discharge claim, the district court dismissed the claim with prejudice as to the defendants, other than Riverview Gardens School District, who were named in the first amended complaint.

5. The district court specifically required that "plaintiff must demonstrate the proposed amended complaint's total compliance with all previous orders of this Court, with Rules 8, 9, 10, and 11 of the Federal Rules of Civil Procedure, and with any heightened standards of pleading applicable to the claims contained in the proposed amended complaint." *Davenport v. Riverview Gardens School Dist.,* No. 4:92CV173, slip op. at 5, 9 (E.D.Mo. Dec. 14, 1992).

complaint. Third, he maintains that the district court abused its discretion in granting defendant's motion for sanctions.

## A. Title VII claim

■ We review a grant of summary judgment de novo. The question before the district court, and this Court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (*Celotex*). The district court granted summary judgment for defendant on plaintiff's Title VII claim for the following stated reasons: plaintiff failed to prove a prima facie case of race discrimination, he failed to prove that the reason given for his discharge was pretextual, and defendant is entitled to summary judgment dismissing plaintiff's race discrimination claim. Slip op. at 9 (Jan. 14, 1993).

■ As to plaintiff's proof of his prima · facie case, the district court agreed with defendant's argument that plaintiff could not meet his burden with respect to two of the four elements of the prima facie case. *Id.* at 5. On the second element, which the district court referred to as "adequate job performance," the district court considered the four alleged infractions which defendant cited as grounds for denying plaintiff's contract renewal; because plaintiff did not dispute the fact that the alleged incidents occurred, the district court apparently concluded that plaintiff had failed to make a sufficient showing on the second element. *Id.* at 5–6. This determination by the district court was analytically flawed for several reasons. First, recognizing that the prima facie case in discrimination cases varies somewhat with the specific facts of each case, *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253–54 n. 6, 101 S.Ct. 1089, 1093–94 n. 6, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 & n. 13, 93 S.Ct. 1817, 1824 & n. 13, 36 L.Ed.2d 668 (1973) (*McDonnell Douglas*)), we believe that the second element in the present case should have been phrased in terms of whether plaintiff was "qualified" for his position. *See, e.g., St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (in race discrimination case, for unlawful demotion and discharge, plaintiff established second element of prima facie case by showing that he was qualified for the position); *Hase v. Missouri Div. of Employment Sec.,* 972 F.2d 893, 896 (8th Cir.1992) (*Hase*) (in age and gender discrimination case, for unlawful failure to promote, plaintiff established second element by showing she met the minimum qualifications for the position). Second, by requiring plaintiff to disprove the alleged conduct violations in order to establish his prima facie case, the district court essentially required plaintiff, at the outset, to disprove defendant's alleged business reasons for its adverse employment action—in other words, to prove pretext and the ultimate issue of intentional discrimination. The prima facie burden is not so onerous. *See Johnson v. Arkansas State Police,* 10 F.3d 547, 551 (8th Cir.1993) (threshold of proof necessary to make a prima facie case is minimal and district court improperly conflated prima facie case with ultimate issue). Third, taken to its logical extreme, the district court's reasoning could have ended the inquiry prematurely, thus denying plaintiff the opportunity to show that, even if these incidents did occur, defendant unlawfully responded by treating plaintiff differently from others who were similarly situated, on account of his race. We hold that plaintiff did show that he was qualified for the teaching and coaching positions which he had held for several years, and that he therefore met his burden of establishing the second element of his prima facie case, at least to the extent necessary to withstand a motion for summary judgment.

■ As to the fourth element, the district court erroneously believed that plaintiff was required to prove that he was replaced by someone outside his protected class. Slip op. at 5, 9 (Jan. 14, 1993). While proof of replacement by a person outside the protected class will satisfy the fourth element, it is now well-settled that such proof is not required. *Walker v. St. Anthony's Medical*

*Center*, 881 F.2d 554, 558 (8th Cir.1989) (no such per se requirement has traditionally been imposed in Title VII cases). "Rather, Title VII has been interpreted to require only that, in addition to the first three elements of a prima facie case, the plaintiff demonstrate that his or her discharge occurred in 'circumstances which allow the court to infer unlawful discrimination.'" *Id.* (citing *Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465, 469 (8th Cir.1984)). It is sufficient that defendant sought to fill the position with someone having plaintiff's qualifications. *See Hase*, 972 F.2d at 896. We therefore hold that the district court also erred in finding that plaintiff failed to establish the fourth element of his prima facie case.

■ However, we agree with the district court's conclusion that there is no genuine dispute on the issue of pretext and the ultimate issue of defendant's intentional discrimination. Slip op. at 9 (Jan. 14, 1993). Defendant's identification of the four alleged infractions sufficiently set forth legitimate, nondiscriminatory reasons for plaintiff's discharge. In his response to defendant's summary judgment motion, plaintiff generally admitted that the four incidents occurred, although he denied that he was ever insubordinate or displayed a poor attitude.[6] He also disputed the reasons for, and significance of, those incidents and accordingly argued that they were merely pretextual.

6. In deposition, however, plaintiff did admit that at the February 27, 1990, meeting with the middle school principal, he stated that the meeting was a "waste of [his] time." Plaintiff's Deposition at 123.

7. Presumably a defendant's stated reason for an adverse employment action could be so frivolous as to not even qualify as a *legitimate*, non-discriminatory reason; however, that is not the case here.

8. We note, however, that the district court stated that plaintiff had the burden to present evidence of someone "who was known by [defendant] to have acted similarly to plaintiff in *all four* respects at issue here, and yet was not terminated." Slip op. at 8 (Jan. 14, 1993). In other words, the district court apparently believed that in order to survive the motion for summary judgment, plaintiff was required to present evidence of another employee who committed the exact same four infractions and yet was not dis-

■ On appeal, plaintiff reiterates his contention that defendant's reliance on the alleged infractions was a mere pretext for racial discrimination. Plaintiff notes that the infractions occurred while he was acting in the capacity of coach, yet he was also discharged from his teaching position; however, the district court correctly found this argument irrelevant because it merely questions the soundness of defendant's business judgment. Slip op. at 7 (Jan. 14, 1993). Plaintiff also argues that the infractions were not serious enough to warrant a discharge; again, even if true, this contention merely questions the soundness of defendant's judgment.[7] Finally, plaintiff maintains that similarly situated white employees committed the same infractions and yet were not discharged. While evidence supporting this claim would be highly relevant to the issue of pretext, plaintiff presented no such evidence other than his own unsubstantiated allegations in deposition. *See* slip op. at 8 (Jan. 14, 1993). In light of plaintiff's failure to adduce any independent evidence to substantiate his disparate treatment claim, we agree with the district court that there is no genuine issue of fact on the issue of pretext and the ultimate issue of intentional discrimination.[8] Defendant is therefore entitled to judgment as a matter of law on plaintiff's Title VII claim of discriminatory discharge. *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552 (failure

charged. To the contrary, the standard for plaintiff to survive summary judgment required only that plaintiff adduce enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence did not directly contradict or disprove defendant's articulated reasons for its actions. *See Hase v. Missouri Div. of Employment Sec.*, 972 F.2d 893, 896–97 (8th Cir.1992) (reversing summary judgment for defendant in failure to promote case where plaintiff's evidence of her higher test scores and performance ratings than those of the promotee created genuine dispute as to ultimate issue of discrimination despite defendant's undisputed claim that plaintiff had less supervisory experience than the promotee). This standard is consistent with the Supreme Court's recent decision in *St. Mary's Honor Ctr. v. Hicks*, — U.S. —, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), where the Supreme Court held that a plaintiff's proof of pretext is relevant to, but not dispositive of, the ultimate issue of intentional discrimination.

to make sufficient showing on an essential element with respect to which non-moving party has burden of proof entitles moving party to judgment as a matter of law).

## B. Plaintiff's motion for leave to amend the complaint

■ Plaintiff next argues that the district court abused its discretion in denying his motion for leave to amend the first amended complaint. Plaintiff argues, in essence, that it was unfair for the district court to deny the motion on grounds that he failed to comply with the district court's previous orders because the December 14, 1992, order did not clearly set forth the district court's directions in this regard. In response, defendant argues that this Court lacks jurisdiction to review this claim on appeal because plaintiff failed to specifically identify the district court's ruling on the motion for leave to amend the complaint in his notice of appeal. The notice of appeal states, in its entirety, "[c]omes now Plaintiff and appeals to the United States Court of Appeals for the Eighth Circuit from the order of the United States District Court for the Eastern District of Missouri granting summary judgment entered on January 14, 1993." Defendant further argues that, in any case, the district court did not abuse its discretion in denying plaintiff's eleventh-hour motion.

■ Upon review, we hold that the district court's ruling on the motion for leave to amend was sufficiently identified in the notice of appeal. Rule 3(c) of the Federal Rules of Appellate Procedure states that the notice "must designate the judgment, order, or part thereof appealed from." On the merits, we hold that the district court did not abuse its discretion in denying plaintiff's motion for leave to amend. Plaintiff moved for leave to amend only thirteen days before the case was set for a bench trial, after the parties had already prepared and submitted their pretrial materials. With the proposed amendment, new issues would have been added and a jury may have been required. Moreover, as the district court noted, plaintiff had long been apprised by the district court of the shortcomings in the original and first amended complaints, and no newly dis-covered facts or circumstances justified the lateness of plaintiff's effort to cure the defects.

## C. Defendant's motion for sanctions

■ Finally, plaintiff argues that the district court erred when it imposed sanctions in its order of December 14, 1992, requiring plaintiff to pay a portion of defendant's costs and reasonable attorneys' fees incurred in filing a motion to compel. In response, defendant again argues that this Court lacks jurisdiction because the notice of appeal contains no mention of the December 14, 1992, order. Apparently recognizing the deficiency in his notice of appeal, plaintiff filed a document entitled "Supplemental Issue on Appeal," after the thirty-day appeal period had expired, asserting that he was also appealing the district court's alleged error in granting the motion to compel and for sanctions in its order of December 14, 1992. Defendant argues, however, and we agree, that filing such a "collateral document," after the thirty-day appeal period, cannot expand the Court's jurisdiction. Fed.R.App.P. 4(a)(1) (notice of appeal must be filed within thirty days after the date of entry of the judgment or order appealed from); *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 315, 108 S.Ct. 2405, 2407–08, 101 L.Ed.2d 285 (1988) (timely filing of notice of appeal required by Rules 3 and 4 of the Federal Rules of Appellate Procedure is mandatory and jurisdictional; court of appeals cannot waive jurisdictional requirements). As mentioned above, the notice of appeal "must designate the judgment, order, or part thereof appealed from." Fed.R.App.P. 3(c). Omission of any reference to the order appealed from is more than a technical deficiency; it creates a jurisdictional bar to the appeal. *Klaudt v. United States Dep't of Interior*, 990 F.2d 409, 411 (8th Cir.1993) (on appeal from district court's final order, appellant's failure to refer to earlier order of district court in notice of appeal is jurisdictional bar to appeal of issues arising from that earlier order). Accordingly, we need not address the merits of this issue.

For the foregoing reasons, the judgment of the district court is affirmed.