Paul J. O'BRYAN, Appellant,

v.

KTIV TELEVISION, Quincy Newspaper, Inc., doing business as KTIV Television, New Jersey Herald, Inc., doing business as KTIV Television, Appellees.

No. 94–4082.

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1995.

Decided Sept. 1, 1995.

Gregg E. Williams, Sioux City, IA, argued, for appellant.

Gregory J. Griffiths, Rochester, MN, argued, for appellee.

Before McMILLIAN, BEAM and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Plaintiff Paul J. O'Bryan appeals from a final order entered in the United States District Court for the Northern District of Iowa granting summary judgment in favor of defendants KTIV Television (KTIV), Quincy Newspaper, Inc., and New Jersey Herald, Inc., on all of plaintiff's federal and state law claims arising out of his employment and termination from employment with KTIV. *O'Bryan v. KTIV Television*, 868 F.Supp. 1146 (N.D.Iowa 1994). For reversal, plaintiff argues that the district court erred in holding that there were no genuine issues of material fact in dispute as to plaintiff's claims of (1) age discrimination, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, (2) retaliatory discharge, in violation of the ADEA and Iowa Code § 216.11 (1993), (3) discriminatory discharge, in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and (4) defamation and false light, in violation of Iowa state law. For the reasons discussed below, we reverse the order of the district court with respect to plaintiff's claims of age discrimination under the ADEA and retaliatory discharge under the ADEA and Iowa Code § 216.11, affirm with respect to plaintiff's claims of ERISA discrimination and defamation and false light, and remand for further proceedings consistent with this opinion.

## Background

The following facts are largely taken from the district court's statement of "uncontested facts." *O'Bryan v. KTIV Television*, 868 F.Supp. at 1151–54. On October 1, 1985, plaintiff was hired by KTIV, a Sioux City, Iowa, television station, to be KTIV's general sales manager. Prior to being hired by KTIV, plaintiff was employed by another Sioux City television station, KCAU–TV (KCAU), where he was the general sales manager. KTIV was purchased by Quincy Newspaper in the fall of 1989. Quincy Newspaper hired William F. Turner to be KTIV's vice president and general manager. Turner also came to KTIV from KCAU, where he had worked with plaintiff. After joining KTIV, Turner mentioned to plaintiff that Quincy Newspaper had paid $21,000,000 for KTIV; he further stated that, in his opinion, Quincy Newspaper had paid too much and that, as a result, costs would have to be cut. In 1991, plaintiff's title and duties were changed and he was given the title of national sales manager. KTIV temporarily operated without a general sales manager. On November 9, 1992, plaintiff was demoted to local and regional sales account executive, and two individuals were promoted above him. Kim Cleaver, a 33–year–old female, who had been the local sales manager, became the general sales manager. Adrian Wisner, a woman (age unknown), who had been an account executive, became the local sales manager.

On May 7, 1993, following his demotion to account executive, plaintiff filed discrimination charges with the Sioux City Human Rights Commission, the Iowa Civil Rights Commission, and the Equal Employment Opportunity Commission (EEOC). The Iowa Civil Rights Commission and the EEOC issued plaintiff right to sue letters.

In early 1993, Wisner drafted new "performance guidelines" for all account executives.[1]

1. The performance guidelines stated the following.
   1. Make monthly budget.
   2. Produce a percentage of Direct Business from 20% to 25%.
   3. Bill an average of $4,000 a month in New direct business. This is to be business that you go out and develop.
   4. Make at least 6 New Calls per week. (Face to Face Client Contacts).
   5. Generate $325 per month in cash production billings.
   6. Meet or exceed average proposal performance. Average is creating 4 tailor made proposals per week for clients and copying your Supervisor, Adrian Wisner. Proposals beyond

The performance guidelines contained eight goals which account executives were told they were expected to meet.

On June 1, 1993, about three weeks after he filed his administrative complaint, plaintiff was given the first in a series of performance evaluations. At a meeting with Wisner, his immediate supervisor, she reviewed the eight points in her performance guidelines. She informed him that he was deficient in several areas. He was placed on sixty days probation and told that failure to meet the performance guidelines by the end of the sixty days would result in termination. Wisner also told him that two other individuals were below the station average and that she would be meeting with them as well.[2] Wisner informed plaintiff that she wanted to meet with him every two weeks to review his progress.

On June 9, 1993, plaintiff sent Wisner a letter in which he stated "I will strive to achieve as many of those performance guidelines as reasonably possible." Joint Appendix at 130–31. His letter specified the areas where he believed the goals were or were not feasible based upon the then-current circumstances in the local market. His letter also suggested ways in which he felt his opportunities to bring in new business could be improved.

Plaintiff's next performance meeting took place on June 21, 1993, and was attended by plaintiff, Wisner, and Cleaver. Plaintiff was again told that his performance had yet to meet the goals of the eight guidelines. Similar meetings took place on July 8 and July 21, 1993; these two July meetings were attended by plaintiff, Wisner, and Turner, and plaintiff was again told that he was not achieving the goals in the eight guidelines. Finally, on August 2, 1993, plaintiff met with Wisner, Cleaver, and Turner, to review his performance during the sixty-day probation-

ary period. Plaintiff was told that he had met only one of the goals, and he was therefore being terminated.

Plaintiff filed this action in federal district court alleging ten separate state and federal law claims against defendants arising out of the allegedly unfair treatment he had received while employed with KTIV and his termination. Defendants moved for summary judgment on all of plaintiff's claims. By a memorandum order dated November 22, 1994, the district court granted defendants' motion for summary judgment, entered judgment for defendants, and dismissed the case. *O'Bryan v. KTIV Television*, 868 F.Supp. at 1177. Plaintiff appealed.

## Discussion

We review a grant of summary judgment *de novo*. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992); *St. Paul Fire & Marine Ins. Co. v. FDIC*, 968 F.2d 695, 699 (8th Cir.1992).

*Age discrimination claim*

■ We first address plaintiff's claim that defendants' decision to terminate him was motivated by age discrimination, in violation

---

this amount will be considered as exceeding this goal.
7. Demonstrate initiative taken on your own accounts and new projects.
8. Prioritize your social interactions.
   a. Lunches, you are expected to attend a minimum of 75% of the Sales Lunches scheduled.
   b. You are expected to attend and participate in 25% of the after hour business functions as identified by the Social Chairman.

Joint Appendix at 123.

2. According to Wisner's affidavit, one account executive, Brian Daugherty, was going to be put on sixty days probation but quit his job before the probation went into effect. Joint Appendix at 118. According to plaintiff's affidavit, two other account executives, Tim Oakley and Elmer Eble, also failed to meet the guidelines. Joint Appendix at 230.

of the ADEA.[3] The district court held that plaintiff had introduced sufficient evidence to survive defendants' motion for summary judgment with respect to his prima facie case. As the district court noted, it is undisputed that plaintiff, at age 58, is in a protected class; it is also undisputed that defendants terminated him. As to the remaining element of plaintiff's prima facie case, the district court held, and we agree, that plaintiff produced sufficient evidence to generate a genuine dispute as to whether he was qualified for the position from which he was terminated. *O'Bryan v. KTIV Television,* 868 F.Supp. at 1172–73.

The district court determined, however, that plaintiff failed to produce sufficient evidence on summary judgment to create a genuine dispute on the issue of pretext. *Id.* at 1173–75. Defendants' proffered reason for terminating plaintiff was inadequate work performance, allegedly demonstrated by plaintiff's failure to meet the performance guidelines. As evidence of plaintiff's alleged poor performance, defendants introduced transcripts from tape-recordings (made without plaintiff's knowledge) of the biweekly performance evaluations which plaintiff was required to undergo with Wisner, Cleaver, and Turner. In response, plaintiff asserted that he was performing his position in a satisfactory manner, that the performance guidelines were unrealistic and applied only to him, and that other salespersons at KTIV who also failed to achieve some of the goals of the performance guidelines were nevertheless retained. The district court apparently agreed—in principle, at least—that these assertions, if substantiated, would create a genuine issue of material fact as to pretext and the ultimate issue of intentional discrimination. *Id.* at 1174. However, the district court held that there was no genuine issue of fact as to pretext because plaintiff's assertions were not supported by any credible

evidence. We disagree with this aspect of the district court's analysis.

With respect to plaintiff's reliance on his own self-serving statements in his affidavit, the district court reasoned that "such conclusory, self-serving statements, standing alone, are insufficient to establish that plaintiff performed his job satisfactorily, especially given the well documented evidence to the contrary [ (i.e., the transcripts of the performance meetings) ]." *Id.* If it were true that plaintiff only produced personal statements claiming that defendants' expectations of him were unrealistic and their treatment of him unfair, we would agree with the district court's conclusion. *See Davenport v. Riverview Gardens Sch. Dist.,* 30 F.3d 940, 945 (8th Cir. 1994) (*Davenport*) (affirming summary judgment for defendant-employer on plaintiff's claim of racial discrimination where plaintiff's only evidence to support allegation that he was treated differently from other similarly situated persons was his own unsubstantiated statements in deposition). However, plaintiff also produced independent documentary evidence which we think was sufficient to create a genuine issue of fact as to pretext and the ultimate issue of intentional discrimination. For example, plaintiff produced evidence which tended to show, among other things, that in 1992 he performed at 136.23% of budget and was the only salesperson to make budget that year. Joint Appendix at 328. Meanwhile, Wisner failed to make budget in 1992, achieving only 94.06% of budget. Joint Appendix at 329.[4] In fact, according to a document dated December 16, 1992, she recorded the lowest figure for new business in November of 1992, earning just $1,940; moreover, for the first eleven months of 1992, she billed well below an average of $3,000 per month in new business. Joint Appendix at 331. Ironically, the third performance guideline, which she authored, required that account executives "[b]ill an average of $4,000 a month in New direct business." Joint Ap-

---

3. Although plaintiff's age discrimination claim in the district court referred to his demotion as well as his termination, his arguments on appeal focus only on his termination. We therefore confine our holding to the issue of whether the district court erred in granting summary judgment on plaintiff's claim that his *termination* was motivated by age discrimination.

4. We also note that the budget which plaintiff was expected to meet increased from $461,000 in 1992 to $663,000 in 1993. *See* Joint Appendix at 635 (deposition of William Turner).

pendix at 123. Thus, the 1992 records tended to show, among other things, that, while Wisner was an account executive, even she was unable to meet the very guidelines defendants relied upon to justify terminating plaintiff. The district court refused to consider any of this documentary evidence in making its summary judgment decision as to plaintiff's age discrimination claim. The court explained, "[a]lthough [plaintiff] has submitted sales documents for other salespersons, the court notes that *these documents relate to 1992 sales, not 1993 sales.*" *O'Bryan v. KTIV*, 868 F.Supp. at 1174 (emphasis added).

It appears that the district court was under the impression that, in order to survive defendants' motion for summary judgment, plaintiff could only rely upon evidence that directly tended to disprove the exact reason stated by defendants for terminating him namely, plaintiff's allegedly inadequate job performance during the sixty days probation, which lasted from early June to early August, 1993. We have specifically rejected such a narrow approach to the plaintiff's burden of proof, when resisting a defendant's motion for summary judgment, in order to establish a genuine issue of fact as to pretext and the ultimate issue of intentional discrimination. For example, in *Hase v. Missouri Div. of Employment Sec.*, 972 F.2d 893, 896–97 (8th Cir.1992) (*Hase* ), cert. denied, ——U.S. ——, 113 S.Ct. 2332, 124 L.Ed.2d 244 (1993), an age and sex discrimination case, the defendant-employer claimed to have rejected the plaintiff for a promotion because she had less supervisory experience than the person who was actually promoted. In opposing the defendant's motion for summary judgment, the plaintiff produced evidence showing that she had consistently received higher test scores and superior performance evaluations than the person who was promoted. *Id.* at 894–95. On appeal from the district court's grant of summary judgment for the defendant, we reversed. We held that, although the plaintiff was unable to directly disprove her employer's proffered reason for denying her the promotion (i.e., her alleged lack of supervisory experience), the objective evidence she produced was nevertheless sufficient to indirectly discredit the

employer's stated reason and create genuine controversy as to whether the defendant was motivated by a discriminatory intent. *Id.* at 897; *see also Davenport*, 30 F.3d at 945 n. 8 ("the standard for plaintiff to survive summary judgment required only that plaintiff adduce enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence did not directly contradict or disprove defendant's articulated reasons for its actions."); *cf. Krenik v. County of Le Sueur*, 47 F.3d 953, 960 (8th Cir.1995) (affirming summary judgment for defendant-employer in age and sex discrimination case where plaintiff produced "no evidence which showed that her qualifications surpassed or even equaled those of [the person hired]"). Moreover, in *Davenport*, 30 F.3d at 945 n. 8, we commented that such an approach to summary judgment is consistent with the holding in *St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993), where the Supreme Court held that a plaintiff's proof of pretext, with respect to the defendant's proffered reason for its actions, is relevant to, but not dispositive of, the ultimate issue of intentional discrimination.

Finally, we note that defendants argue for the first time on appeal that the district court's summary judgment disposition of plaintiff's age discrimination claim was appropriate under the reasoning set forth in *Lowe v. J.B. Hunt Transport, Inc.*, 963 F.2d 173 (8th Cir.1992) (*Lowe* ). The plaintiff in *Lowe* brought a claim alleging that he had been discharged in violation of the ADEA. The district court directed a verdict for the defendant-employer. This court affirmed, reasoning that "[i]t is simply incredible, in light of the weakness of plaintiff's evidence otherwise, that the company officials who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later." *Id.* at 175. Defendants in the present case argue that "[i]t is simply not credible to suggest that Mr. Turner, who assisted [plaintiff] in attaining employment with KTIV and promoted [plaintiff] would later demote and eventually fire [plaintiff] because he had suddenly developed an aver-

sion to [plaintiff's] age." Brief for Appellees at 23. In response, plaintiff argues, among other things, that *Lowe* is distinguishable for several significant factual reasons. We agree.

Plaintiff was hired by KTIV in 1985. Although Turner gave plaintiff a favorable recommendation, Turner had no decisionmaking role in hiring plaintiff since Turner did not join KTIV until 1989. Moreover, we cannot say, as a matter of undisputed fact, that Turner ever promoted plaintiff. Contrary to defendants' assertion on appeal, plaintiff alleges, and the district court found, that plaintiff was hired in 1985 as the general sales manager of KTIV; he therefore already held that position at the time Turner was hired in 1989. The evidence does not indicate that the change in plaintiff's job title to national sales manager constituted a promotion; in fact, plaintiff considers that change to have been a demotion. Finally, Turner was not the only person at KTIV who was responsible for plaintiff's termination; both Cleaver and Wisner played important roles in that decisionmaking process. We therefore conclude that the narrow holding of *Lowe* does not apply to the present case, and the ultimate issue of intentional discrimination remains in genuine controversy. Accordingly, we hold that the district court erred in granting summary judgment for defendants on plaintiff's claim that his termination was motivated by age discrimination, in violation of the ADEA.

*Retaliatory discharge claim under the ADEA*

We next consider plaintiff's claim, brought pursuant to the ADEA and Iowa Code § 216.11, that defendants terminated him in retaliation for filing administrative complaints with the EEOC and the Iowa Civil Rights Commission.[5] The ADEA provides, in pertinent part, that

[i]t shall be unlawful for an employer to discriminate against any of his [or her] employees ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d). Similarly, Iowa Code § 216.11 provides that

[i]t shall be an unfair or discriminatory practice for:

. . . .

2. Any person to discriminate or retaliate against another person in any of the rights protected against discrimination by this chapter because such person has lawfully opposed any practice forbidden under this chapter, obeys the provisions of this chapter, or has filed a complaint, testified, or assisted in any proceeding under this chapter.

On plaintiff's retaliation claim, the district court held that he had produced enough evidence to survive summary judgment with respect to his prima facie case. *O'Bryan v. KTIV Television*, 868 F.Supp. at 1176. The district court held that plaintiff produced sufficient evidence to show, for summary judgment purposes, that (1) he had engaged in protected activity under the ADEA; (2) he had been subjected to adverse employment action by defendants at the time of or after the protected conduct occurred; and (3) there was a causal link between the protected activity and the adverse employment action. *Id.* at 1175 (citing *Wentz v. Maryland Casualty Co.*, 869 F.2d 1153, 1154 (8th Cir. 1989)). As to the third element of plaintiff's prima facie case, the district court rejected defendants' argument that plaintiff had failed to produce sufficient evidence to create a genuine issue of fact as to whether there was a causal connection between the filing of plaintiff's administrative complaints and his termination three months later. We agree with the district court's conclusion that the close proximity in time between plaintiff's administrative filings and his termination "established, at minimum, a genuine issue of material fact on the elements of his *prima facie* case." *O'Bryan v. KTIV Television*, 868 F.Supp. at 1176 (citing *Schweiss v.*

---

**5.** Retaliation claims under Iowa Code § 216.11 are analyzed in the same manner as retaliations

claims under federal law. *Hulme v. Barrett*, 480 N.W.2d 40, 42 (Iowa 1992).

*Chrysler Motors Corp.,* 987 F.2d 548, 549 (8th Cir.1993) (*Schweiss* )).

The district court again determined, however, that plaintiff had failed to produce sufficient evidence to create a genuine dispute on the issue of pretext. *O'Bryan v. KTIV Television,* 868 F.Supp. at 1176–77. The district court held that, although temporal proximity was sufficient to generate a genuine dispute as to plaintiff's prima facie case, it was not enough to rebut, for summary judgment purposes, defendants' proffered explanation that plaintiff was fired for inadequate job performance. In reaching this conclusion, the district court characterized the present case as "on all fours with" *Schweiss. O'Bryan v. KTIV Television,* 868 F.Supp. at 1177. In *Schweiss,* the plaintiff "offer[ed] no evidence of retaliatory motive other than the timing of her firing, and she offer[ed] nothing to undermine the overwhelming evidence offered by [the defendant] in support of a legitimate reason for her firing." 987 F.2d at 550. In the present case, by contrast, plaintiff did produce evidence of defendants' retaliatory intent, other than the mere circumstantial evidence of timing. In addition to the evidence discussed in connection with plaintiff's age discrimination claim, plaintiff's affidavit and deposition testimony set forth specific factual descriptions of two statements allegedly made by Turner from which a retaliatory motive could be inferred.

First, at a meeting of all the salespersons, which Turner allegedly called just after plaintiff filed his administrative complaints, Turner allegedly told the whole sales staff that plaintiff had filed discrimination charges against KTIV and that the charges had no merit. Joint Appendix at 462 (deposition of Paul O'Bryan). In light of the absence of a denial by defendants that this statement was made by Turner, we assume, for summary judgment purposes, that Turner did make this statement as plaintiff alleges. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986) (ordinarily, on summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor"). The second statement was made on August 2, 1993, at the time of plaintiff's termination. It is undisputed that Turner made this second statement. Turner stated "[w]e wish you well, Paul, but since there is a claim being carried before the Sioux City Human Rights Commission we are asking you not to be a visitor to the station at all and I think you'll understand the reason for that." Joint Appendix at 180 (Exhibit I to Adrian Wisner's affidavit; transcript of meeting on August 2, 1993).

These two statements made by Turner, standing alone, certainly could be interpreted benignly, and a jury might well conclude that defendants' decision to terminate plaintiff was entirely motivated by plaintiff's unsatisfactory job performance. "Our task at the summary judgment stage, however, 'is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Davis v. Fleming Cos.,* 55 F.3d 1369 (8th Cir.1995) (*Davis* ) (reversing district court's grant of summary judgment for defendant-employer where plaintiff alleged that he was discharged in retaliation for reporting sexual harassment). Not only was plaintiff terminated only three months after he filed his administrative complaints, he was subjected to unprecedented job scrutiny, was required to meet brand new job performance guidelines, and was given a probationary ultimatum which led directly to his termination, all within a matter of only a few weeks after his protected conduct occurred.[6] Thus, in light

---

6. In *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 921 (11th Cir.1993), a retaliation case brought pursuant to the ADEA, the Eleventh Circuit explained:

> In the instant case, there exists evidence beyond that introduced to establish the prima facie case, which tends to suggest Appellee's proffered reasons were mere pretext. In particular, Appellant introduced evidence that prior to the filing of his complaints, he regularly received above average performance evaluations. Immediately preceding and following his filing of his administrative complaints, however, Appellant received numerous unfavorable performance evaluations and was subject to increased scrutiny and harassment from his supervisors. If proven at trial, such incidents would bear on the pretext issue. *See* B. Schlei & P. Grossman, *Employment Discrimination Law* 554 (2d ed. 1983) (noting that

of the evidence and factual circumstances of this case—including the 1992 reports, Turner's statements, and the close temporal proximity between plaintiff's protected conduct and the critical demands imposed by Turner, Wisner, and Cleaver, as well as plaintiff's termination—we cannot say, as a matter of law, that there are no genuine issues of material fact with respect to plaintiff's retaliation claim. Accordingly, we hold that the district court erred in granting summary judgment for defendants on plaintiff's claim of retaliatory discharge under the ADEA and Iowa Code § 216.11.

*Remaining claims on appeal*

Plaintiff also appeals the district court's summary judgment disposition of his claims of ERISA discrimination and defamation and false light. Upon careful review of the record, the arguments on appeal, and the district court's order, we agree with the district court's disposition of these issues. *O'Bryan v. KTIV Television,* 868 F.Supp. at 1159–60 (ERISA claim); *id.* at 1169–71 (defamation and false light claims). Accordingly, we hold that the district court did not err in granting summary judgment for defendants on the remaining claims before us.

## Conclusion

For the reasons discussed, the order of the district court is reversed in part and affirmed in part, and the case is remanded to the district court for further proceedings consistent with this opinion.

surveillance "strongly suggests the possibility of a search for a pretextual basis for discipline, which in turn suggests that subsequent discipline was for purposes of retaliation").