Judith WALTHER, Plaintiff,

v.

EVEREST & JENNINGS, INC. and Everest & Jennings International, Ltd., Defendants.

No. 4:95CV2398–DJS.

United States District Court, E.D. Missouri, Eastern Division.

March 21, 1997.

Gregory G. Fenlon, Godfrey and Fenlon, St. Louis, MO, for Plaintiff.

Thomas O. McCarthy, Partner, Diana M. Wagner, McMahon and Berger, St. Louis, MO, for Everest & Jennings, Inc.

Thomas O. McCarthy, Partner, Diana M. Wagner, McMahon and Berger, St. Louis, MO, John F. Kuenstler, Franczek and Sullivan, Chicago, IL, for Everest & Jennings International, Ltd.

### ORDER

STOHR, District Judge.

On December 12, 1995, plaintiff filed her complaint alleging discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") (Count I) and the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Count II). Plaintiff alleges that she was terminated from her employment with defendants on the basis of her age (50) and her sex. Several motions are pending before the Court including a motion to dismiss or, in the alternative, for summary judgment filed by Everest & Jennings International, Ltd. ("E & J International") and defendants' motion for summary judgment.

## A. E & J International's Motion To Dismiss or, in the Alternative, For Summary Judgment [1]

■ Everest & Jennings, Inc. ("E & J") manufactures a broad range of medical products including hospital and homecare beds, wheelchairs and oxygen concentrators. E & J is a wholly owned subsidiary of E & J International. E & J International asserts that it is not a proper Title VII or ADEA defendant because it was not plaintiff's employer. See 42 U.S.C. § 2000e–2. The general rule under both the ADEA and Title VII is that a parent corporation is not liable for statutory violations of its subsidiaries. Nonetheless, where circumstances warrant, consolidated treatment of two entities as a single employer under Title VII and the ADEA may be appropriate. See Baker v. Stuart Broadcasting Co., 560 F.2d 389, 392 (8th Cir.1977) (applying factors developed by the National Labor Relations Board which include interrelationship of operations, common management, centralized control of labor relations and common ownership or financial control); see also Lenhardt v. Basic Inst. of Tech. Inc., 55 F.3d 377, 380 (8th Cir.1995) (finding that Title VII and the ADEA define employer in a substantially identical manner).

Applying the factors set forth in Baker v. Stuart Broadcasting Co. to the record before it, the Court finds that plaintiff has presented evidence which could demonstrate that consolidated treatment of E & J and E & J International would be proper.[2] Nonetheless, based upon the Court's resolution of the merits of plaintiff's discrimination claims, the Court need not determine whether defendants should be treated as a consolidated entity. As discussed below, the Court finds that plaintiff has failed to adduce sufficient evidence of discrimination based upon her age or her sex to survive summary judgment. Thus, the Court will deny as moot E & J International's motion to dismiss or, in the alternative, for summary judgment.

### B. Summary Judgment Standard

This Court must grant summary judgment if, based upon the pleadings, admissions, depositions, and affidavits, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party must initially demonstrate the absence of an issue for trial. Id. at 323, 106 S.Ct. at 2552–53. Any doubt as to the existence of a material fact must be resolved in favor of the party opposing the motion. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Nevertheless, once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead set forth specific facts showing that there is a genuine issue of material fact for trial. Fed.R.Civ. P. 56(e). Summary judgment must be granted to the movant if, after adequate time

---

1. Because the parties have attached matters outside the pleadings, the Court construes the motion as one for summary judgment. See Fed. R.Civ.P. 12(c).

2. The Court is aware of the "strong presumption that a parent company is not the employer of its subsidiary's employees." Frank v. U.S. West, Inc., 3 F.3d 1357, 1362 (10th Cir.1993). Nevertheless, plaintiff has presented evidence, which if analyzed in light of the factors set forth in Baker, could demonstrate that E & J and E & J International should be consolidated as plaintiff's employer. First, a press release dated April 1, 1994 announced plaintiff's departure from "Everest & Jennings International, Ltd." and stated that plaintiff was no longer with the "Everest & Jennings Group of companies." Additionally, the 1993 organizational chart for E & J International includes plaintiff and makes no distinction between E & J and E & J International. Mem. in Opp., Exh. 8. Moreover, the record is unclear as to whether Bevil Hogg was President and CEO of E & J, E & J International, or both. Depo. of Hogg, pp. 17–19; Mem. in Opp, Exh. 8. Finally, Hogg testified that the officers of E & J International and E & J were one and the same. Id. In an attempt to controvert this evidence, E & J International presented the Court with (1) an affidavit which summarily states that E & J was plaintiff's employer and (2) a copy of plaintiff's W–2 indicating that plaintiff was paid by E & J. Defendants' evidence failed to address the factors set forth in Baker and failed to clarify the nature of the working relationship between the two defendants.

for discovery, the nonmoving party fails to produce any proof to establish an element essential to the party's case and upon which it bears the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322–24, 106 S.Ct. at 2552–53. For "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.

### C. Undisputed Facts

Plaintiff was employed by defendants[3] as Vice–President of International Sales and Marketing. Plaintiff had been employed by Amedco, which was acquired by E & J in 1990. Plaintiff's duties were separate from defendants' domestic sales and marketing. In January of 1994, either E & J or E & J International acquired Medical Composite Technology ("MCT"). The record is unclear as to which entity acquired MCT. Depo. of Hogg, p. 13. MCT had been developing and marketing a specialized lightweight high performance wheelchair through a patented process. Bevil Hogg had been part owner and Chief Executive Officer ("CEO") of MCT. In January of 1994, Hogg became President and CEO, although the record is unclear as to whether Hogg was President and CEO of E & J, E & J International, or both. Depo. of Hogg, pp. 17–19; Mem. in Opp, Exh. 8 (organizational chart of E & J International).[4]

E & J lost over $50 million in 1993. As a result, Hogg implemented cost cutting measures which included the decision to concentrate on the domestic market and eventually eliminate the international sales department. Hogg reviewed E & J's revenues and estimated that only 1% were derived from international sales. In February of 1994, Hogg eliminated plaintiff's position. At that time, plaintiff was fifty (50) years of age. Hogg stated that he selected plaintiff for layoff because he intended to eliminate "virtually all" of E & J's international sales. Depo. of Hogg, p. 31. Plaintiff was told she was terminated "due to the ongoing unprofitable financial condition of the company and the need to reduce staff overhead expenses."

At approximately the same time Hogg selected plaintiff for termination, he was commencing an aggressive downsizing of E & J's workforce. Approximately twelve other senior managers were terminated based upon the elimination of certain positions or business segments. Depo. of Hogg, pp. 48–49. Between January 1, 1993 and April 30, 1994, 66 employees were terminated. Mot. for Sum. Judg., Exh. H. Between March 31, 1994 and March 31, 1995, approximately 760 jobs were eliminated. E & J losses totalled approximately $50 million in 1993, $10 million in 1994 and $1.5 million in 1995. Depo. of Hogg, pp. 104–05.

Although downsizing, Hogg wanted to determine if the Vision wheelchair had any export potential in Europe. Thus, in March of 1994, Hogg decided to retain Keith Wells,[5] a former MCT employee, on an interim basis as a part-time consultant for the Vision wheelchair. Wells had an extensive and specialized experience with the Vision wheelchair at MCT. Wells called on some of plaintiff's former customers in an effort to set up international distributors for the Vision wheelchair. Wells used the title "Export Sales Manager." In September of 1994, when it became apparent that E & J could not sell Vision wheelchairs in Europe due to a non-compete agreement, Wells was terminated. Wells' consulting agreement was for approximately 20 hours per week, and lasted from March to September of 1994.

### D. The Reduction in Force ("RIF")

■ Although plaintiff concedes that defendants were involved in an extensive reorganization after the acquisition of MCT, plaintiff argues that defendants' claim of a RIF is "frivolous." Mem. in Opp., p. 10–11. Plaintiff argues that "[w]ithin one month prior to [her] termination, defendant purchased

---

**3.** As previously mentioned, the Court will not reach the issue of whether E & J and E & J International should be treated as a consolidated entity. Solely for the purpose of convenience, however, throughout this order the Court will refer to plaintiff's employer as "defendants."

**4.** In many instances the parties failed to distinguish E & J and E & J International.

**5.** Wells was under the age of forty (40) and male.

[MCT] valued at approximately 9 million dollars." Plaintiff also argues that "within the one month time frame, defendant hired approximately 50 new employees at salaries in excess of what current [E & J] employees were making." Mem. in Opp., p. 11. Plaintiff's second allegation is unsubstantiated and neither allegation precludes a finding of a legitimate RIF. Based upon the undisputed facts above, defendants have presented ample evidence that the RIF was a result of legitimate economic concerns. *See Jones v. Unisys Corp.*, 54 F.3d 624, 631 (10th Cir. 1995).

█ Plaintiff's final argument that the RIF was not legitimate is particularly without merit. Plaintiff argues that defendants' lack of a plan and lack of criteria upon which to base decisions to terminate employees demonstrates that at the time of her discharge, defendants had no overall plan to reduce the work force. Mem. in Opp., 13. As the Eighth Circuit has stated,

> [a] company does not need to provide objective criteria for determining who should be discharged to make the RIF "legitimate." Whether criteria is provided does not overcome the fact that the company made a business decision to reduce its workforce and therefore had a legitimate reason for terminating qualified employees.

*Hardin v. Hussmann*, 45 F.3d 262, 265 (8th Cir.1995).

Viewing the evidence in plaintiff's favor, the Court finds that plaintiff was terminated during a RIF and will analyze her claims accordingly. *See Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 763 (8th Cir.1995) (affirming a district court's finding that plaintiff was terminated during an extensive reorganization which constituted a legitimate RIF); *Bashara v. Black Hills Corp.*, 26 F.3d 820, 824–25 (8th Cir.1994) (finding all the hallmarks of a bona fide RIF made in the exercise of business judgment).

### E. Sex and Age Discrimination

Plaintiff does not allege any direct evidence of sex or age discrimination, thus, this case is governed by the framework of burden shifting developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as refined by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under this analytical framework, plaintiff bears the initial burden of establishing a prima facie case of age and sex discrimination. The burden then shifts to defendants, who must articulate some legitimate, nondiscriminatory reason for their adverse employment action. If defendants carry their burden, the presumption raised by plaintiff's prima facie case is rebutted and the burden returns to plaintiff to show that defendants' proffered reason was merely a pretext for age and/or sex discrimination. *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir.1996).

█ The Eighth Circuit has repeatedly held that in order to establish a prima facie case, a plaintiff who has been dismissed pursuant to a RIF must, in addition to the ordinary requirements of the prima facie case, "provide some 'additional showing' that [unlawful discrimination] was a factor in the termination." *Nitschke v. McDonnell Douglas Corp.*, 68 F.3d 249, 251 (8th Cir.1995), *quoting Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 776 (8th Cir.1995). Defendants contend that plaintiff fails to offer any evidence which might satisfy the additional element by raising an inference that age or sex was a motivating factor in plaintiff's selection for termination.

Even if plaintiff satisfies the "additional showing" requirement of the prima facie case in this context, the ultimate burden is also hers to prove that defendants' proffered nondiscriminatory reasons are a pretext for age and/or sex discrimination. Both aspects of plaintiff's burden require an examination of the sufficiency of plaintiff's proof of age-based and sex-based discrimination. In the age discrimination context, the Eighth Circuit has recently held that summary judgment may be entered against a discrimination plaintiff whose "evidence is insufficient for a reasonable trier of fact to infer age discrimination even though the plaintiff may

have created a factual dispute as to the issue of pretext." *Rothmeier v. Investment Advisers, Inc.,* 85 F.3d at 1335. Moreover, in the Title VII summary judgment context, the Eighth Circuit has recently held that once defendants assert a nondiscriminatory reason for plaintiff's termination, plaintiff must come forward with sufficient admissible evidence from which a rational factfinder could find that defendants' proffered nondiscriminatory reasons were either untrue or not the real reason for her termination, and that intentional discrimination was the real reason. *Lang v. Star Herald,* 107 F.3d 1308, 1311 (8th Cir.1997).

■ Plaintiff offers the following facts and evidence in an attempt to meet both her prima facie and ultimate burdens of proof. First, plaintiff points to remarks from Hogg [6] in which he told plaintiff she "was doing a good job" and "not costing the company hardly anything" and "was bringing in millions of dollars." Mem. in Opp., p. 6. In the context of a RIF, evidence of positive comments regarding plaintiff's performance are "particularly unpersuasive." *Hutson v. McDonnell Douglas Corp.,* 63 F.3d at 771. "[E]ven capable employees are released when an employer is downsizing, and therefore evidence of competence is not particularly probative." *Id.* Moreover, although plaintiff claims Hogg made these positive remarks to her, she does not quarrel with any of the evidence defendants presented regarding the losses which the International Division, and E & J as a whole, were incurring.

Plaintiff also argues that defendants supplied inconsistent reasons for her termination. Mem. in Opp., p. 14. Plaintiff argues that the service letter provided by defendants stated that she was terminated due to "the ongoing unprofitable financial condition of the company and the need to reduce staff overhead expenses." Plaintiff argues that this statement is inconsistent with defendants' later statements that she

was terminated as part of a RIF. The Court finds no inconsistency. Plaintiff was terminated as part of a RIF, which was necessitated by unprofitable financial conditions.

Plaintiff next argues that Wells took over plaintiff's job duties full-time after her termination.[7] Plaintiff argues that Wells' use of the title "Export Sales Manager" is evidence that defendants did not eliminate their export business or her position. The record demonstrates that after plaintiff's termination, five individuals, including Wells, were responsible for defendants' remaining international sales. Depo. of Hogg, p. 118. It is undisputed that Wells was a former MCT employee whom Hogg decided to retain after the MCT acquisition and that Wells had extensive and specialized experience with the Vision wheelchair at MCT. In September of 1994, when it became apparent that E & J could not sell Vision wheelchairs in Europe due to a non-compete agreement, Wells was terminated.

■ Plaintiff's allegations regarding defendants' decision to retain Wells is not probative of age or sex discrimination. Hogg's decision to retain Wells and to allow him to attempt to market the Vision wheelchair in Europe was an exercise of business judgment. Plaintiff's arguments are nothing more than assertions of her subjective belief and a quarrel with defendants' business judgment. *Davenport v. Riverview Gardens,* 30 F.3d 940, 945 (8th Cir.1994). Moreover, the fact that some of plaintiff's duties were assumed by a younger person or persons after her position was eliminated is insufficient additional evidence to show intentional discrimination. *Holley v. Sanyo,* 771 F.2d 1161, 1167 (8th Cir.1985).

Next, plaintiff argues that she was misled regarding whose decision it was to terminate her and that:

---

**6.** Plaintiff also points to other remarks.

**7.** Plaintiff testified that it was her "understanding" that Wells was assigned full-time to take over her position. Plaintiff conceded that she had no firsthand knowledge of this. Depo. of Walther, p. 73. The record gives no support to her "understanding." Plaintiff relies upon a

credit inquiry which she alleges demonstrates that Wells was a "long term, full time employee." The document in question is dated February, 1994 and is consistent with defendants' assertions that Wells became a part-time consultant in March of 1994. Mem. in Opp., p. 10, Exh. 5.

defendant covered up the fact that plaintiff was replaced with a younger male; defendant lied about a company decision to eliminate international sales; defendant provided false answers to interrogatories; and defendant covered up the fact that it was hiring managerial employees at the time plaintiff was discharged.

Mem. in Opp., p. 13. Plaintiff's allegations are unsubstantiated. As discussed above, the record does not support plaintiff's claim that she was "replaced" by Wells and there is no evidence that defendants attempted a "cover up." Plaintiff's allegations of lying and providing false answers are unsupported. Finally, plaintiff's evidence that other managers were being hired at the time she was discharged does not assist her establishing her prima facie case or meeting her ultimate burden of proof. Although the record is unclear as to exactly which employees were "new hires" and which employees were former employees of MCT who were retained, it is clear that after the MCT acquisition, personnel shifts were made, including layoffs. Plaintiff's allegations of "new hiring" would be more accurately characterized as MCT personnel being integrated with, and to some extent replacing, employees of E & J.[8] Some additional new hiring or reorganization is not inconsistent with a RIF, especially when it is undisputed that the total number of E & J employees was substantially decreasing.[9]

Finally, plaintiff's attempt to raise a genuine dispute of fact concerning her availability for reassignment is unavailing, and would not preclude summary judgment in the absence of sufficient evidence to create a submissible case of discrimination on the basis of age or sex. *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d at 1335. It is undisputed that plaintiff's international duties were separate from defendants' domestic sales and marketing and that Hogg intended to eliminate "virtually all" of E & J's international sales. Again, plaintiff's contention does little more than quarrel with the soundness of defendant's judgment in selection of plaintiff for termination, which, without more, is not evidence of age or sex discrimination. *Davenport v. Riverview Gardens*, 30 F.3d at 945.

Even if plaintiff made a prima facie case of age or sex discrimination, the Court finds that defendants have satisfied any subsequent burden of producing evidence that plaintiff's termination was for a legitimate, non-discriminatory reason—the RIF and the virtual elimination of the International Division. Having carefully analyzed each piece of evidence upon which plaintiff relies, the Court concludes as a matter of law that plaintiff has failed to make the additional showing of age or sex discrimination required to satisfy the requirements of the prima facie case in the RIF context, failed to create a genuine dispute of fact concerning pretext in her selection for termination, and failed to demonstrate an ability to adduce sufficient evidence for a reasonable trier of fact to infer discrimination. For all the foregoing reasons, defendants are entitled to summary judgment on plaintiff's claims of age discrimination under the ADEA and sex discrimination under Title VII.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Doc. # 26] is granted.

**IT IS FURTHER ORDERED** that the motion to dismiss or in the alternative for summary judgment filed by defendant Everest & Jennings, International, Ltd. [Doc. # 10–1, 10–2] is denied as moot.

**IT IS FURTHER ORDERED** that defendants' motion to compel [Doc. # 21] is denied as moot.

**IT IS FURTHER ORDERED** that defendants' "Motion for Reconsideration and Opposition to Plaintiff's Motion for Leave to File Additional Documents" [Doc. # 33] and "Defendant's Motion in Opposition to Plain-

8. For example, plaintiff claims that Keith Wells and Tom French were "new hires." It is undisputed that both were former MCT employees. Plaintiff also claims that Diego Pichetti was a "new hire." Pichetti was brought in from defendants' "Canadian operation." Mem. in Opp., p. 7.

9. By plaintiff's own admission, the total number of employees decreased from 1,115 on March 31, 1994 to 735 on March 31, 1995. Mem. in Opp., p. 10.

tiff's Motion for Leave to File Additional Documents" are denied as moot.