**Donna KRENIK, Appellant,**

v.

**COUNTY OF Le SUEUR, Appellee.**

**No. 93–4056.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 17, 1994.

Decided Feb. 13, 1995.

William P. Skemp, LaCrosse, WI, argued, for appellant.

Terrance J. Foy, Minneapolis, MN, argued, for appellee.

Before BOWMAN and LOKEN, Circuit Judges, and STEVENS,* District Judge.

STEVENS, District Judge.

Donna Krenik appeals from a final judgment entered by the district court,[1] granting summary judgment in favor of County of Le Sueur. The district court held that appellant had failed to carry her burden on her claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act and the Equal Pay Act. We affirm.

## I. BACKGROUND

Le Sueur County ("County") employs a building maintenance engineer ("maintenance engineer") and an assistant building maintenance engineer ("assistant") to care for the County's two buildings, the courthouse and the jail. The maintenance engineer and the assistant share the task of cleaning the two buildings. The practice has been each week for one employee to clean the jail while the other cleans the courthouse, then they switch buildings the following week. The maintenance engineer's duties also include operating and maintaining the boiler and air conditioning equipment, minor electrical and mechanical repair, and supervising the assistant. The maintenance engineer receives $11.64 per hour and the assistant receives $7.15 per hour.

Donna Krenik has served as the assistant building maintenance engineer since 1986. In 1992 her supervisor Paul Ehmke resigned from the maintenance engineer position. The County advertised the position and Krenik applied.

The County received forty-three applications and selected eleven candidates for interviews on the basis of their qualifications. After interviewing the eleven candidates, the Le Sueur County Board of Commissioners chose three finalists. They included Donna Krenik, a 42 year old female; James McMillen, a younger male; and a third individual. All three returned for a final round of interviews before the County filled the position. The Commissioners questioned each finalist about mechanical, electrical and plumbing maintenance. McMillen gave detailed answers which revealed a thorough knowledge of these areas. Krenik's answers showed only a basic knowledge.

The County Commissioners met on February 28, 1993 to discuss filling the maintenance engineer position. One Commissioner, Robert Casey, moved that the board hire Donna Krenik. He believed that the County should support its longtime employees. Casey's motion died for lack of a second. A motion was then made to offer the position to James McMillen. This measure passed by a vote of four to one, with Casey voting against.

Krenik filed suit in federal district court under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA") and the Equal Pay Act ("EPA"). She claimed that the County discriminated against her on the basis of sex and age when it selected McMillen for the position. She also claimed that the maintenance engineer and the assistant positions were essentially identical and that the County violated the EPA by paying the male

---

* The HONORABLE JOSEPH E. STEVENS, JR., Chief Judge, United States District Court for the Western District of Missouri, sitting by designation.

1. The HONORABLE PAUL A. MAGNUSON, United States District Judge for the District of Minnesota.

maintenance engineer more than the female assistant.

The County moved for summary judgment. It admitted that Krenik had established a prima facie case of discrimination under Title VII and the ADEA but argued that its decision was justified because McMillen was the best candidate. The County also argued that the supervisory duties of the maintenance engineer position distinguished it from the assistant position and justified the difference in pay. The district court granted the County's motion for summary judgment. The court found that Krenik had failed to show that the County's proffered reason was pretextual. On the EPA claim the court held that Krenik had failed to prove that the two positions were equal under the act.

## II. TITLE VII AND ADEA CLAIMS

Appellant contends that the district court erred in granting summary judgment for appellee on her Title VII and ADEA claims. She has three arguments. First, she claims that summary judgment was inappropriate because satisfaction by both parties of their initial burdens creates a genuine issue for trial which precludes summary judgment. Second, she claims that the limitations which summary judgment imposes on the production and presentation of evidence unfairly restrict her access to trial. Third, she argues that summary judgment is inappropriate where intent and motive are at issue. The legal issues raised by these arguments involve the interconnection between the analytical framework which the Supreme Court has developed for employment discrimination cases, and the summary judgment standard which the Court has established under Rule 56 of the Federal Rules of Civil Procedure.

■ The standard of review for summary judgment motions is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, show that there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). Any inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmoving party may not, however, "rest on mere allegations or denials" but must demonstrate on the record the existence of specific facts which create a genuine issue for trial. Fed. R.Civ.P. 56(e). Such an issue exists and summary judgment must be denied if on the record then before it the court determines that there will be sufficient evidence for a jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

■ In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) the Supreme Court set out the now familiar burden-shifting framework which establishes the "order and allocation of proof" in the trial of employment discrimination suits. This framework applies to cases under both ADEA and Title VII. *Gaworski v. ITT Commercial Finance Corp.*, 17 F.3d 1104, 1108 n. 3 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994); *and see e.g., Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir.1994) (ADEA); *Kobrin v. University of Minn.*, 34 F.3d 698, 701 (8th Cir.1994) (Title VII). Expressed in terms of the standards applicable to summary judgment, the three parts of *McDonnell Douglas* analysis are as follows. First, the plaintiff must demonstrate the ability to prove the four elements of a prima facie case. To make this showing, not a difficult or onerous burden, *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), the record must demonstrate that plaintiff can prove: 1) that she is a member of a protected class; 2) that she applied and was qualified for a job for which the employer was seeking applicants; 3) that she was rejected; and 4) that after rejecting plaintiff the employer continued to seek applicants with plaintiff's qualifications. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. This fourth element of the prima facie case is

slightly different for each of this appellant's two discrimination claims. Under Title VII she must show that the employer hired a man for the position. *Kobrin,* 34 F.3d at 702. Under ADEA she must show that the employer hired a younger individual. *Rinehart v. City of Independence,* 35 F.3d 1263, 1265–66 (8th Cir.1994); *Hillebrand v. M–Tron Indus.,* 827 F.2d 363, 366 n. 6 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). The prima facie case, in the absence of an explanation from the employer, creates a rebuttable presumption of discrimination. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.

■ In the second part of the *McDonnell Douglas* analysis the burden shifts to the defendant who must rebut the presumption of discrimination by producing evidence, "that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Id.* This is a burden of production not proof. The defendant need not persuade the court, it must simply provide evidence sufficient to sustain a judgment in its favor. In the third and final part of the analysis, the burden shifts back to plaintiff once the defendant has met its burden of production. Plaintiff must then establish the existence of facts which if proven at trial would permit a jury to conclude that the defendant's proffered reason is pretextual and that intentional discrimination was the true reason for the defendant's actions. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

### A.

■ Krenik first argues that the opposing contentions of her prima facie case and the County's proffered nondiscriminatory reason create a genuine issue for trial which precludes summary judgment. Krenik argues that the Supreme Court recognized this position in *St. Mary's Honor Center.* The Court, in that case, observed that once the defendant has met its burden,

The presumption [of discrimination], having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture. The defendant's "production" (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven "that the defendant intentionally discriminated against [him]".

*St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2749 (citations omitted). Krenik equates reaching the "ultimate question" of discrimination, with a legal conclusion that there is a genuine issue for trial on that question, under the summary judgment standard. She reads too much into this language.

■ *St. Mary's Honor Center* does define the nature of a plaintiff's burden of proof at the third stage of the *McDonnell Douglas* analysis. But it does not hold that plaintiff's prima facie case is sufficient to establish a submissible case once the defendant has met its burden. Such a conclusion is beyond the scope of the case and contrary to the law. The elements of a prima facie case permit an inference of intentional discrimination only in the absence of a legitimate explanation from the defendant. *St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2747. Once the defendant has carried its burden of demonstrating a non-pretextual reason for the action complained of, "the factual inquiry proceeds to a new level of specificity." *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1095. To survive summary judgment at the third stage of the *McDonnell Douglas* analysis, a plaintiff must demonstrate the existence of evidence of some additional facts that would allow a jury to find that the defendant's proffered reason is pretext and that the real reason for its action was intentional discrimination. *St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2747. These additional facts may be limited solely to proof of pretext because:

The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination.

*St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2749 (emphasis original); *and see Harvey v. Anheuser–Busch, Inc.,* 38 F.3d 968, 971 (8th Cir.1994); *Gaworski,* 17 F.3d at 1109. But there must be some additional evidence beyond the elements of the prima facie case to support a finding of pretext. Thus, Krenik's argument that she was entitled to a full trial once both parties had met their initial burdens fails as a matter of law.

### B.

■■■ Appellant next argues that she cannot present the additional evidence necessary to establish a submissible case because her opportunities to develop it are unduly restricted at the summary judgment stage. Under the *McDonnell Douglas* analysis, once both sides have met their initial burdens, plaintiff must be given a "full and fair opportunity" to demonstrate that the proffered reason is pretext. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825. Appellant argues that cross examination of the defendant's decision-makers provides the best opportunity to demonstrate pretext and that therefore a full trial is necessary to ensure fairness to the plaintiff. She cites cases where the Supreme Court refers to cross examination as one method by which a plaintiff may demonstrate pretext. *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10; *St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2747. Both of these cases had reached trial, and in each opinion the Court's discussion of a plaintiff's evidentiary opportunities was necessarily couched in terms of courtroom techniques. These examples are limited by their procedural posture and are not persuasive here.

Examination of the defendant's decision makers may be the best way of eliciting evidence of pretext, but testimony in open court is not the only way to obtain it. Deposition testimony provides an adequate substitute for cross examination, particularly in an effort to avoid a summary judgment. If appellant could not present a submissible case through deposition testimony there is no reason to hold a full dress trial simply to give her a second opportunity to question the same witnesses on the stand. "[S]ummary judgment need not be denied 'merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint.'" *Meyer v. Dans un Jardin, S.A.,* 816 F.2d 533, 537 (10th Cir.1987) (quoting *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624, 627 (Fed.Cir.1984)). Appellant's unsupported assertion that a full trial offers her a better opportunity to establish a submissible case fails to justify exempting employment discrimination cases from summary judgment procedures.

### C.

■■■ Appellant's third argument is that summary judgment is inappropriate where intent is at issue. Krenik cites a patent infringement case where this Court observed that, "[s]ummary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles." *Pfizer, Inc. v. International Rectifier Corp.,* 538 F.2d 180, 185 (8th Cir.1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977). We have recognized that this principle also applies in employment discrimination cases. *Keys v. Lutheran Family and Children's Services of Missouri,* 668 F.2d 356, 358 (8th Cir.1981). Yet, as we have said in another setting, this language merely states the, "unexceptional rule that summary judgment is not appropriate when there is a genuine dispute about a party's intent or motive, if material to the case, for that creates a triable issue of fact." *City of Mt. Pleasant v. Associated Electric Cooperative, Inc.,* 838 F.2d 268, 274 n. 5 (8th Cir. 1988). It cannot and should not be construed to exempt employment discrimination cases involving motive and intent from summary judgment procedures. At the third stage of the *McDonnell Douglas* analysis, plaintiff must still present sufficient evidence to permit a jury to find that the defendant's proffered reason is merely a pretext for intentional discrimination.

### D.

■■■ Having addressed Appellant's legal arguments, we turn to the district court's decision. We note at the outset that our

review is de novo. *Hase v. Missouri Div. of Employment Sec.,* 972 F.2d 893, 895 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2332, 124 L.Ed.2d 244 (1993). Appellant suggests that she did present to the district court sufficient evidence of pretext to survive summary judgment. We disagree. The record and appellant's arguments reveal nothing which would warrant disturbing the decision of the district court. The County maintained that it hired McMillen because he was the most qualified applicant. Krenik presented evidence which showed that she too, was qualified for the position, but no evidence which showed that her qualifications surpassed or even equaled those of McMillen. The record shows that McMillen possesses a trade school degree and that his prior jobs included supervisory experience. Furthermore, during his interview he demonstrated a thorough acquaintance with basic electrical, plumbing and mechanical repair work. Krenik does not possess a post high school degree, had no recent supervisory experience equivalent to McMillen's, and she failed to demonstrate the same level of practical knowledge in her interview. Krenik did offer an affidavit from a technical assistant/secretary with the County who applied for and was denied the position of her supervisor, the Zoning Administrator. The conclusory allegations contained in this affidavit fail to provide any factual basis to conclude that the County's proffered reason was pretextual or that it was animated by discriminatory motives. Fed.R.Civ.P. 56(e) ("party may not rest on mere allegations").

Krenik responds to the clear proof of McMillen's superior qualifications by attempting to minimize their importance. She argues that the job primarily involves cleaning and that McMillen's additional knowledge of electrical wiring, plumbing and mechanical repairs is largely unnecessary. She essentially argues that the County placed undue emphasis on these skills. However, "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions ... Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Harvey,* 38 F.3d at 973 (quoting *Elrod v. Sears, Roebuck and Co.,* 939 F.2d 1466, 1470 (11th Cir.1991)). Krenik acknowledges in her affidavit that at least a rudimentary knowledge of these matters is necessary, if only to know when something needs to be repaired. An applicant's electrical, plumbing and mechanical knowledge and skill were relevant, at least in part, to job performance. The County could consider such knowledge and skill when judging the finalists, and could fairly consider the candidate who demonstrated the greatest proficiency in them the best qualified. We hold that the District Court properly granted summary judgment against Krenik because she failed to present any evidence to support a finding that the County's proffered reason was a pretext for sex or age discrimination.

## III. EQUAL PAY ACT

In her final assignment of error, appellant argues that the district court erred as a matter of law when it determined that the pay differential between the maintenance engineer and assistant positions did not violate the Equal Pay Act of 1963. The Equal Pay Act prohibits employers from discriminating:

> ... between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions ...

29 U.S.C. § 206(d)(1). The plaintiff has the burden of proving that the jobs involve "equal work." *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974).

> Whether two jobs entail equal skill, equal effort, or equal responsibility requires practical judgment on the basis of all the facts and circumstances of a particular case. Skill includes such considerations as experience, training, education, and ability. Effort refers to the physical or mental exertion necessary to the performance of a job. Responsibility concerns the degree of accountability required in performing a job.

*E.E.O.C. v. Universal Underwriters Ins. Co.,* 653 F.2d 1243, 1245 (8th Cir.1981). Jobs do not have to be identical to be considered "equal" under the EPA. "Insubstantial or minor differences in the degree or amount of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable." 29 C.F.R. 1620.14(a).

As a practical matter both positions involve the same type of maintenance work. But the maintenance engineer position does carry additional responsibility. He supervises the assistant and serves as the department head. The question is whether this added responsibility renders the two positions unequal for purposes of the Act. We hold that it does.

The district court turned to the Code of Federal Regulations for guidance and found an example in 29 C.F.R. § 1620.17 persuasive. The regulation, promulgated by the Equal Employment Opportunity Commission, approves a pay differential between substantially similar jobs when the higher wages are paid to a worker who periodically assumes supervisory duties when the regular supervisor is absent. It states that:

> In such a situation, payment of the higher rate to the employee might well be based solely on the additional responsibility required to perform the job and the equal pay provisions would not require the same rates to be paid to an employee of the opposite sex in the group who does not have an equal responsibility.

29 C.F.R. § 1620.17(b)(1). The district court's reliance on regulation 29 C.F.R. § 1620.17 is well placed. "We are mindful that interpretive bulletins of a governmental department charged with the administration of a federal law should be given weight and serve as guidance to the courts." *Hodgson v. Security Nat'l Bank,* 460 F.2d 57, 59 (8th Cir.1972). The full time supervisory duties and departmental responsibilities of the maintenance engineer position surpass the part-time supervisory duties which the regulation holds would support a pay differential. The district court correctly granted summary judgment because Krenik had failed to establish that the positions were "equal" under the act.

## IV. CONCLUSION

For the reasons stated, the judgment of the district court is affirmed.