Carolyn LIDGE–MYRTIL, Appellant,

v.

DEERE & COMPANY, doing business as John Deere Company, Appellee.

No. 94–2985.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 13, 1995.

Decided March 3, 1995.

Aunna L. Peoples, Kansas City, MO, for appellant.

Ann Mesle, Daniel M. Dibble and Christine M. McKee, Kansas City, MO, for appellee.

Before WOLLMAN, Circuit Judge, LAY, Senior Circuit Judge, and BEAM, Circuit Judge.

WOLLMAN, Circuit Judge.

Carolyn Lidge–Myrtil ("Lidge") appeals from the district court's[1] grant of summary judgment in favor of Deere & Company ("Deere") on her race discrimination claims. We agree with the district court that although Lidge fashioned a prima facie case of discrimination, Deere rebutted the presump-

tion by offering a legitimate, non-discriminatory reason for its failure to promote her. *See Lidge–Myrtil v. Deere & Co.*, 857 F.Supp. 666, 671 (W.D.Mo.1994). Because Lidge is unable to make a showing that Deere's proffered rationale is pretextual, we affirm.

### I.

Lidge, a black female, began working for Deere in 1974 in Kansas City, Missouri, as a grade two key punch operator. She received a promotion to grade three terminal entry operator in 1977, but requested a return to her original data entry position for personal reasons in 1980. She has remained at grade two ever since, and was laterally transferred to the position of record clerk in August 1992 due to the dissolution of Deere's billing department.

Lidge sought promotions to various positions since 1980, but received none. In July 1992, she was again passed over for a promotion, this time to the position of human resources secretary. The position instead went to a white female, Cindy Bundschuh. Lidge claims that she is more qualified and has greater seniority than Bundschuh and the only reason she did not get the position is because of her race. Lidge is nearing completion of her bachelor's degree, has participated in several of Deere's in-house training programs, and has received consistently high performance evaluations of her job skills. She also, however, has been the subject of several disciplinary meetings, and this is reflected in her performance evaluations.

Bundschuh began working for Deere in 1980 as a grade two record clerk in Waterloo, Iowa. She relocated to Kansas City when Deere downsized its Waterloo operations in 1987 and was promoted to a grade three credit clerk (now titled finance department secretary) in 1990. The credit clerk's duties are substantially similar to those of the human resource secretary. Bundschuh had her bachelor's degree at the time she was given the position and has no disciplinary record.

---

1. The Honorable Dean R. Whipple, United States District Judge for the Western District of Missouri.

On August 4, 1992, Lidge filed a discrimination charge with the Missouri Commission on Human Rights and the United States Equal Employment Opportunity Commission, alleging that the failure to promote her to human resources secretary constituted race and age discrimination. Both institutions rendered determinations of "no probable cause" of discrimination. Lidge subsequently filed a three-count suit alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the Missouri Human Rights Act, Mo.Rev.Stat. § 213.010 *et seq.*[2]

## II.

To recover on her Title VII claim, Lidge must satisfy the now-familiar three-level *McDonnell Douglas* inquiry. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973); *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). She must demonstrate a prima facie case of discrimination by showing that she is a member of a protected class, that she sought and was denied a promotion for which she was qualified, and that the promotion was given to another person who is not a member of the protected class. *Bell v. Bolger*, 708 F.2d 1312, 1316 (8th Cir.1983); *see Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–54, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981); *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The district court held that a genuine question of fact remained as to whether Lidge was qualified for the position. Deere, while noting its disagreement with this finding, does not argue this point on appeal, and we accept that Lidge has established a sufficient prima facie case to preclude summary judgment on that issue.

Deere, however, is able to satisfy the second level of our inquiry and rebut this presumption of discrimination by articulating a legitimate, non-discriminatory reason for failing to promote Lidge. *See Saint Mary's Honor Ctr. v. Hicks*, —— U.S. ——, ——, —————— 113 S.Ct. 2742, 2747, 2751–52, 125 L.Ed.2d 407 (1993); *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094–95; *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. at 1824–25. Deere claims that the human resources secretary position requires, in addition to an ability to do the basic secretarial work, excellent interpersonal skills and a high degree of confidentiality and discretion. Deere states that it believes that Bundschuh was more qualified than Lidge for the position based on these factors. As evidence of this, Deere points to the fact that Bundschuh possessed greater academic credentials, was already working at a grade three level with job duties substantially similar to those required by the human resources secretary, had a good performance history in this similar position, and not only had never faced any disciplinary problems as a Deere employee, but was known for being a good team player who got along well with her co-workers.

Lidge, on the other hand, had experienced some disciplinary problems at work. Specifically, Deere points to numerous meetings with Lidge regarding her poor relationships with co-workers and excessive personal telephone use. In June and November of 1988, supervisors met with Lidge to discuss her poor attitude and verbal abuse of peers. In the November meeting, the possibility of severe disciplinary action was discussed if things did not improve. In September 1989, Lidge had a verbal confrontation with a co-worker that required management intervention. Consistent with these problems, Lidge received below average job performance appraisals for her interpersonal relations in 1989 and 1990. Also, in July 1991, Lidge met

2. Lidge also asserts that Deere discriminated against her by failing to promote her, at various times, to the positions of return goods clerk, sales promotions coordinator, dealer communications network coordinator, and secretary to the general manager. The only incident of discrimination alleged in her complaint and addressed by the trial court (which did consider these additional incidents as circumstantial evidence of Lidge's discrimination claim), however, involved the failure to promote her to the position of human resources secretary on July 27, 1992. Accordingly, we do not address the substance of these claims because they are not properly before us on appeal. *See Brock v. Logan County Sheriff's Dep't of Ark.*, 3 F.3d 1215, 1216 (8th Cir. 1993) (per curiam).

with supervisors to discuss her excessive personal telephone use on company time because they were concerned about how this might affect her job performance and the performance of her co-workers.

█ Because Deere has met its burden, the presumption generated by Lidge's prima facie case "drops out," and she must show that there is a genuine factual issue as to discriminatory intent. *Hicks*, —— U.S. at ——, 113 S.Ct. at 2749. Lidge must produce "some additional evidence beyond the elements of the prima facie case" that would allow a rational jury to reject Deere's proffered reasons as a mere pretext for discrimination. *Krenik*, 47 F.3d at 959; *see Marzec v. Marsh*, 990 F.2d 393, 395 (8th Cir.1993); *Pierce v. Marsh*, 859 F.2d 601, 604 (8th Cir.1988). Although Lidge does possess the experience and some of the other qualities essential for success in the position, this does not suffice to raise an inference that Deere's stated rationale for giving the position to another is pretextual. *Krenik*, 47 F.3d at 960; *Pierce*, 859 F.2d at 603. "The mere existence of comparable qualifications between two applicants, one black [female] and one white female, alone does not raise an inference of racial discrimination." *Pierce*, 859 F.2d at 604; *see Burdine*, 450 U.S. at 258–59, 101 S.Ct. at 1096–97. Lidge's abilities alone cannot rebut Deere's stated belief that Bundschuh better exemplified the standard of employment conduct necessary for the position, particularly when she was aware that management had concerns about her abrasive demeanor and phone habits and knew those considerations might come into play in personnel decisions.

Lidge offers as additional circumstantial evidence of racial animus an incident where she was told that Deere did not "want a darky sitting up front." Not only did Lidge neglect to mention this to the district court, but she also declines to say who made the alleged comment. Lidge specifically admits that she has had no problems with her managers and does not point to any instances where they displayed any racial animus towards her. To claim that a single offhand hearsay comment by an unnamed co-worker proves discrimination by Deere is impermis-

sible, *see Jeffries v. Metro–Mark, Inc.*, 45 F.3d 258, 260 (8th Cir.1995), and we afford it no credence in Lidge's attempt to rebut Deere's proffered legitimate reason for giving the position to another.

Lidge also challenges Deere's rationale as pretextual because "several white employees with records of poor performance, job skills[,] and less seniority have received promotions to grade three positions." Although we need not consider this argument because it was first raised in Lidge's reply brief, *Dyer v. United States*, 23 F.3d 1421, 1424 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 136, 130 L.Ed.2d 78 (1994), we exercise our discretion to do so in searching the entire record for a genuine factual issue of pretextual discrimination. Most of the "promotions" Lidge complains of were the result of job reassignment, consolidation, and reorganization at Deere due to its massive restructuring and downsizing of its work force by more than 50 percent during the 1980s and early 1990s. The other alleged instances involve either mutual decisions between the employee and Deere or other situations particular to the individual employee involved. Additionally, none of these other employees had a disciplinary history comparable to Lidge's. Accordingly, Lidge has failed to make a sufficient showing that these disparately treated white employees were similarly situated, and therefore has "presented no credible evidence of pretext." *Harvey v. Anheuser–Busch, Inc.*, 38 F.3d 968, 972 (8th Cir.1994).

The other positions for which Lidge alleges she was denied promotions are also of limited relevance and also fail to raise an inference of pretext in this instance. Lidge was essentially ineligible for the general manager's secretary and dealer communications network coordinator positions because they were classified as grade four jobs, and employees generally would move up only one grade at a time. Of the other two positions, the return goods clerk involved a situation where two employees merely switched positions and the sales promotion coordinator involved a lateral transfer. The filling of this latter position with a lateral refutes Lidge's other claim that Deere disregarded its own

promotion procedure because of racial animus. Although Deere normally sought to promote a qualified individual before making a lateral transfer, Lidge has proffered no evidence that this policy was blindly adhered to even when management had legitimate concerns relative to a specific employee or position, particularly during this period of corporate downsizing.

■ Deere proffered a legitimate, non-discriminatory reason for giving Bundschuh the position. We do not sit to determine if this reason is based on sound principles of business judgment. *Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945 (8th Cir.1994); *see Krenik*, 47 F.3d at 960. Nor is it our place to tell a business that it must promote an individual who may very well be inappropriate for a position when it can laterally move someone deemed better suited to fill that position. Rather, the relevant inquiry is whether Deere's decision was based on race. *See Hicks*, —— U.S. at ——, 113 S.Ct. at 2749; *see also Gray v. University of Ark. at Fayetteville*, 883 F.2d 1394, 1401 (8th Cir. 1989) (applying *McDonnell Douglas* to gender discrimination claim). Deere could legitimately take Lidge's acerbic personality into consideration when making such personnel decisions. Having reviewed the record as a whole, we find that Lidge is unable to adduce a genuine issue of fact with respect to her "ultimate burden of proving discriminatory intent." *Marzec*, 990 F.2d at 395; *see Hicks*, —— U.S. at ——, 113 S.Ct. at 2749. Accordingly, Deere is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

### III.

■ Lidge's other claims are premised on the same factual bases as her Title VII claim, and therefore face similar analysis. Because she has failed to show that Deere's stated reasons for failing to promote her were pretextual, Lidge's section 1981 claim and Missouri state law claim must also fail. *Richmond v. Board of Regents of the Univ. of Minn.*, 957 F.2d 595, 598 (8th Cir.1992) (section 1981); *Missouri Comm'n of Human*

*Rights v. City of Sikeston*, 769 S.W.2d 798, 801 (Mo.App.1989) (state claim).

The judgment is affirmed.