_____

No. 95-3827
_____

Jan Johnson,                          *
                                      *
          Appellant,                  *
                                      *
     v.                               *  Appeal from the United States
                                      *  District Court for the Western
Baptist Medical Center,               *  District of Missouri.
also known as Health Midwest;         *
Goppert Family Care Center;           *
and Dr. Lawrence Rues,                *
                                      *
          Appellees.                  *

_____

Submitted: May 17, 1996

Filed: October 7, 1996
_____

Before McMILLIAN, FAGG, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Dr. Jan Johnson was a member of the residency program at the Goppert Family Care Center of Baptist Medical Center (collectively "BMC"), in Kansas City, Missouri. Her attending physician was Dr. Lawrence Rues, at that time the associate director of the family care center. After nearly a year and a half in the program, the faculty of the residency program informed her that she did not meet the minimum standards of acceptable performance, and she was given the choice of resigning or being terminated. She resigned, then sued BMC for gender discrimination under Title VII, Title IX, and Missouri state law, and sued Dr. Rues for defamation. The district court granted BMC's motion for summary judgment on the

discrimination claim, and granted defendants' motions to dismiss the defamation claim for failure to state a claim upon which relief could be granted.  We affirm the judgment of the district court.[1]

I.

Title VII gender discrimination actions have well-established rules for allocating the burdens of production and persuasion to the parties. The plaintiff must first establish a prima facie case of gender discrimination by adducing proof that the plaintiff (1) is a member of a protected class, (2) was qualified for the job, (3) was discharged, and (4) was replaced by a male (or the position remained open while BMC sought a replacement, or the circumstances surrounding the discharge otherwise created an inference of unlawful discrimination).  See St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2747 (1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Davenport v. Riverview Gardens School Dist., 30 F.3d 940, 945 (8th Cir. 1994); Walker v. St. Anthony's Medical Ctr., 881 F.2d 554, 558 (8th Cir. 1989).  If the plaintiff succeeds in establishing a prima facie case, a rebuttable presumption is created; the defendant must then advance a legitimate, nondiscriminatory reason for the discharge.  St. Mary's Honor Center, 113 S. Ct. at 2747.  If the defendant does so, then the plaintiff must demonstrate that the proffered reason was not the true reason for the discharge.  Id.  "Plaintiff must ... establish the existence of facts which if proven at trial would permit a jury to conclude that the defendant's proffered reason is pretextual and that intentional discrimination was the true reason for the defendant's actions."  Krenik v. County of Le Sueur, 47 F.3d 953, 958 (8th Cir. 1995) (citing St. Mary's Honor Center, 113 S. Ct. at 2747).

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

We note that when a plaintiff complains of discrimination with regard to conditions of employment in an institution of higher learning, the method of evaluating Title IX gender discrimination claims is the same as those in a Title VII case.  O'Conner v. Peru State College, 781 F.2d 632, 642 n. 8 (8th Cir. 1986); see Preston v. Commonwealth of Va. ex rel. New River Community College, 31 F.3d 203, 206-07 (4th Cir. 1994).  Although the residency program combines features of both employment and academic study, it appears to be primarily an employment setting not unlike apprenticeship.  Dr. Johnson, more importantly, makes no separate Title IX argument on appeal.  In addition, we note that Missouri courts analyzing gender discrimination under state law follow the framework of McDonnell Douglas v. Green, supra.  See Midstate Oil Co. v. Missouri Comm'n on Human Rights, 679 S.W.2d 842, 845-46 (Mo. 1984) (en banc).

We review the district court's summary judgment dismissal de novo. Once the plaintiff makes her prima facie case and the defendant produces evidence of a legitimate reason for termination, the plaintiff faces dismissal of her claim if she fails to make a submissible case on the question of whether the defendant's reason for terminating her was merely a pretext for discrimination.  See Ledge-Myrtil v. Deere & Co., 49 F.3d 1308, 1311 (8th Cir. 1995).  "To survive summary judgment at the third stage of the McDonnell Douglas analysis, a plaintiff must demonstrate the existence of evidence of some additional facts that would allow a jury to find that the defendant's proffered reason is pretext and that the real reason for its action was intentional discrimination."  Krenik, 47 F.3d at 958 (citing St. Mary's Honor Center, 113 S. Ct. at 2747).

We will assume, for purposes of analysis, that Dr. Johnson has made out a prima facie case, although the matter is hardly free from doubt.  BMC produced evidence that a legitimate, nondiscriminatory motive lay behind Dr. Johnson's termination, namely, that she did not perform according to the reasonable

expectations of the faculty of the program. BMC met its burden of production because it proffered substantial evidence of the faculty's displeasure with her performance in the residency program. The evaluation forms provide for categories of "Excellent," "Adequate," and "Needs much improvement." Dr. Johnson received mostly "Needs much improvement" marks in her emergency, pulmonary, obstetrics, and neonatology rotations, and many such marks in her general medicine, family practice, and cardiology rotations. The faculty comments often touched on Dr. Johnson's weak knowledge base and inability to diagnose and manage patients. Other residents, both male and female, did not have such a high number of disappointing evaluations. According to BMC, her low level of performance led the BMC faculty to conclude that she was not fulfilling the minimum requirements of the residency program.

Because BMC has advanced a legitimate nondiscriminatory reason for its adverse employment actions, Dr. Johnson must produce some evidence creating a genuine issue of fact as to whether BMC's explanation is pretextual and whether BMC harbored a discriminatory intent. See Ledge-Myrtil, 49 F.3d at 1311; Davenport, 30 F.3d at 945 & n.8. Dr. Johnson, however, has not done so. Her proffered evidence seems to be twofold. First, she maintains that Dr. Rues and other faculty harbored a discriminatory animus toward women. While she worked in rotations in various practice areas under a number of different physicians, Dr. Rues was her attending physician (in other words, her supervisor). Plaintiff portrays Dr. Rues as the prime mover in undermining her career at BMC. Dr. Johnson characterizes Dr. Rues as "intimidating, abusive, and judgmental" toward her and other female residents, but patient and understanding with male residents. She also avers that another female resident requested an attending physician other than Dr. Rues because she felt "put down" by him. Dr. Johnson's anecdotal "proof" of such disparate treatment, however, appears to consist entirely of hearsay, which cannot defeat a motion for summary judgment. See Davidson & Schaaf, Inc. v. Liberty Nat'l Fire Ins.

Co., 69 F.3d 868, 871 (8th Cir. 1995). She also claims that Dr. Rues criticized a female resident's procedures in delivering a baby. But this episode cannot support a finding of a discriminatory mindset, else every criticism of a woman would carry a presumption of unlawful animus. In addition, she points to the fact that another male doctor once inappropriately sprayed a female resident with sterile saline solution as a joke and on another occasion made apparently disparaging comments about that resident. We believe that these incidents are insufficiently serious to raise an inference of animus on the part of BMC generally.

Second, Dr. Johnson identifies various male residents who she asserts were similarly situated with respect to her in terms of performance, but who were not asked to leave the program. These male residents, however, had fewer unfavorable evaluations than Dr. Johnson, and hence they cannot be considered similarly situated. We find that the proof of discriminatory intent is insufficient to support a jury verdict in Dr. Johnson's favor, and we therefore find that the district court's grant of summary judgment for BMC was appropriate.

## II.

We now turn to Dr Johnson's defamation claim. Dr. Johnson alleged that Dr. Rues told employees of BMC (1) that she had done poorly in cardiology, (2) that she had had problems in various areas of the residency program, and (3) that she had voluntarily resigned her position. The district court dismissed for failure to state a claim, Fed. R. Civ. P. 12(b)(6), finding that Dr. Rues's remarks were merely opinion, were privileged by Dr. Johnson's implicit consent, and were not "published" under the intra-corporate immunity doctrine. We review the district court's determinations of state law de novo, giving its decision no deference. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

The district court did not err in concluding that Dr. Johnson consented to critical evaluation by the faculty of the residency program. Missouri follows the Restatement of Torts and its position that consent can make privileged otherwise potentially defamatory statements. <u>See</u> Restatement of Torts Second § 583; <u>Johnson v. City of Buckner</u>, 610 S.W.2d 406, 411-12 (Mo. App. 1980).

Dr. Johnson appears to concede that the first two of Dr. Rues's statements alleged above were made to other faculty in the residency program. Because Dr. Johnson was a resident seeking Board Certification in Family Practice, it was necessary that the faculty supervise and evaluate her work. Dr. Johnson received from BMC a booklet entitled "Special Requirements for Residency Training in Family Practice," which stated: "There must be adequate, on-going evaluation of the knowledge, competency, and performance of the residents. Entry evaluation assessment, interim testing and periodic reassessment, as well as other modalities for evaluation, should be utilized." Under these circumstances, it is not error to find that Dr. Johnson consented to the allegedly defamatory remarks, because consent to evaluation reasonably implies a consent to intra-faculty discussion of an employee's progress. The district court therefore correctly concluded that Dr. Rues's alleged remarks were privileged.

As to the third statement, a statement apparently made to residents as well as faculty, that Dr. Johnson had voluntarily resigned, the district court concluded that the statement was not defamatory. Dr. Johnson made no argument in her briefs with respect to this question, and we therefore decline to address it.

III.

For the foregoing reasons, the judgment of the district court is affirmed. Dr. Johnson's motion to supplement the record on appeal is granted, and BMC's motion to strike portions of the appellant's appendix and supplemental appendix on appeal is denied.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.