**Lafayane MANSE, Plaintiff,**

v.

**UNION ELECTRIC COMPANY, Defendant.**

No. 4:95CV2202 TCM.

United States District Court, E.D. Missouri, Eastern Division.

April 1, 1997.

Mary Anne Sedey, William E. Moench, Sedey & Moench, St. Louis, for Plaintiff.

John H. Quinn, III, Partner, Jennifier L. Arendes, Armstrong & Teasdale, St. Louis, for Defendant.

## MEMORANDUM AND ORDER

MUMMERT, United States Magistrate Judge.

This employment discrimination action is before the Court on the motion of defendant, Union Electric Company ("UE"), for summary judgment in the two count-complaint filed by Lafayane Manse ("Plaintiff") alleging that UE discriminated against him because of his race, African–American, by not promoting him to a building service mechanic position and by subjecting him to a racially hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, and of the Civil Rights Act of 1991, 42 U.S.C. § 1981. [Doc. 18]

For the reasons set forth below, the motion will be granted and judgment will be entered accordingly.

### I. BACKGROUND

The facts material to a resolution of this dispute are as follows.

Plaintiff was hired by UE in November 1992 as a power station porter. (Def.'s Ex. "B".) He was promoted in April 1993 to a stationman position; and, in May 1993, he began work as a janitor for UE. (*Id.*) In April 1994, Plaintiff was again promoted, this time to a meter reader position. (*Id.*; Pl.'s Dep. at 6, 87.) He remains in this position. (*Id.*)

In June 1993, UE posted a notice of vacancy for a building service mechanic position. (Def's Ex. "F".) The notice listed the qualifications as "288 hours schooling in electricity (AC & DC). 288 hours schooling in refrigeration and air conditioning. Two (2) years work experience as a journeyman and presently working in that classification. Score at least 80 in written test on inside electric wiring and refrigeration and air conditioning." (*Id.*) There are no other jobs at UE requiring that the applicant be currently working as a journeyman to be qualified.[1]

---

1. Plaintiff cites three deposition references in support of his allegation that the building ser-

vices mechanic position was the only position at UE to require the applicant to be currently work-

(*See* Lane Dep. at 33.) The positions occupied by Plaintiff are not and were not journeyman positions.

The classification of positions at UE as journeyman positions is governed by a labor agreement between UE and the International Brotherhood of Electrical Workers (IBEW), as is the selection process for filing vacant positions. (Def.'s Exs. "C" and "H".) The labor agreement also governed the bidding for the building service mechanic position. (Def.'s Ex. "F".)

Fifty UE employees, including Plaintiff, bid on the building service mechanic position.[2] (Def.'s Ex. "I".) Plaintiff alleges he was told by a department manager, James Lane, that he would receive a form letter advising him that he failed to satisfy the journeyman requirement for the position and therefore would not be considered for the job. (Pl.'s Dep. at 23.) Lane further told Plaintiff to ignore the form letter because it was "standard procedure" and that Lane would check Plaintiff's qualifications and get back to him. (*Id.* at 21–23.)

Amy Becher, UE's office supervisor in the building service department, reviewed the employees on the bid list and first determined which of the bidding employees were then working as a journeyman. (Becher Dep. at 14–15; Lane Dep. at 19–20.) Employees who were not were sent a letter informing them that they were disqualified on that basis. (Becher Dep. at 14.) Becher notified Plaintiff's supervisor, S.E. DuBose, that Plaintiff would not be considered for the building service mechanic position because he was not currently working as a journeyman, one of the qualifications for the position. (*Id.;* Pl.'s Ex. 5.) Twenty-nine of the other employees who had bid on the building service mechanic position were also disqualified because they were not currently working as a journeyman. (Def.'s Ex. "I".) Eighteen of the thirty, including Plaintiff, were African–

Americans and twelve were Caucasians. (*Id.*) The remaining twenty applicants who bid on the position were disqualified for other reasons, including course requirement deficiencies. (*Id.*)

Based on his conversation with Lane, Plaintiff thought that he was being considered for the building service mechanic position even after he received the notice from Becher. (Pl.'s Dep. at 116–119.)

Because the building service mechanic position was not filled by an UE employee, UE hired someone outside of the company to fill the position—Robert Westoff, a Caucasian. (James W. Armistead Dep. at 51–52, 94.) UE personnel involved in the decision to hire Westoff included Lane, Jonetta Carver, James Armistead, and Floyd McFarland. (Pl.'s Ex. 4.) When hired by UE, Westoff had two years' experience as a journeyman with McDonnell Douglas Corporation. (Pl.'s Ex. 10.) It is unclear whether he was laid off or working at the time he was hired. (*Id.*)

Knowing that UE was seeking outside applicants because there were no successful bidders working for UE, Plaintiff inquired about the reason he was not hired. He received a handwritten reply from Armistead requesting that Plaintiff provide verification that he met the course requirements for the position. (Pl.'s Ex. 6; Pl.'s Dep. at 114–115.) Armistead noted that once the course requirements were verified he would "work on [Plaintiff's] journeyman questions." (*Id.*) Two months later, in November 1993, Armistead informed Plaintiff that he was 144 hours short of the requirement for AC electrical course work. (Pl.'s Ex. 7.) He also eleven months short of the requirement that he work two years as a journeyman, and was not currently working as a journeyman.[3] (*Id.*)

Plaintiff filed a grievance contesting his disqualification for the building service me-

---

ing as a journeyman—Scott deposition at page 20; Becher deposition at page 33; and Carver deposition at pages 10–11. These deposition pages were not submitted by either party. UE, however, does not contest Plaintiff's allegation.

**2.** UE advertises itself as a "promote from within company"—hiring people for an entry level job,

providing them with on-the-job training, and then promoting them to higher-paid positions. (Pl.'s Dep. at 18–20; Pl.'s Ex. 26 at 3.)

**3.** Plaintiff had worked as a journeyman for a previous employer for thirteen months.

chanic position. (Pl.'s Dep. at 50–51.) H.R. Scott, UE's executive assistant for Industrial Relations, informed IBEW that UE would not review Plaintiff's course requirements because Plaintiff did not have the necessary two years' experience as a journeyman. (Pl.'s Ex. 8.) The grievance was denied and was not taken to arbitration. (Pl.'s Dep. at 50–51.)

Plaintiff disputes UE's assertion that qualified applicants for the building service mechanic position had to be currently employed as a journeyman. Plaintiff points to (a) the hiring of Lindell Zimmerman as a building service mechanic on February 23, 1982, while Zimmerman was laid off from his construction job,[4] and (b) the hiring of Bradley Janis as a building service mechanic in July 1987 even though Janis last worked as a journeyman for another employer in December 1986. (Pl.'s Exs. 8, 9, 10, 11, 23, and 24.) UE does not dispute that Zimmerman and Janis were laid off from their previous jobs when hired by UE, but instead argues that the two men were not similarly situated to Plaintiff. Armistead testified in his deposition that he distinguishes an applicant who is not working as a journeyman because of a layoff from one who quits his or her journeyman position. (Armistead Dep. at 32–33, 36–37.)

In addition to Plaintiff's argument that he was not promoted to the building service mechanic position because of his race, he also alleges that he was subjected to a hostile work environment, specifically alleging that derogatory racial remarks or jokes were made by Floyd McFarland, a UE supervisor. (Def.'s Ex. "O".)

Plaintiff testified in his deposition that he did not hear McFarland make any such derogatory statements or jokes, but heard of this conduct from other African–American UE employees. (Pl.'s Dep. at 57–60, 60–74.) Plaintiff further testified that the alleged racial comments were not directed toward him. (*Id.* at 68.)

DuBose, an African–American, is Plaintiff's supervisor and reports to McFarland. (*Id.*

at 130–131.) The alleged comments by McFarland were never reported by Plaintiff to DuBose, nor did they affect the way Plaintiff performed his job. (*Id.* at 76.) Plaintiff testified, however, that the alleged comments affected him emotionally because the comments were demeaning. (*Id.* at 76–77.) He did not seek medical help for these emotional repercussions. (*Id.*) McFarland gave Plaintiff good performance ratings. (*Id.* at 130–131.)

Plaintiff's EEOC charge makes no allegation of a hostile work environment. (Def.'s Ex. "N".)

## II. DISCUSSION

**A.** *Standard of Review,* Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if it has a real basis in the record; and, a genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citations omitted).

The initial burden is on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant. Iowa v. Associated Elec. Co-op., Inc.* 838 F.2d 268, 273 (8th Cir.1988). After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby.*

---

4. Plaintiff cites pages 73–74 of Annistead's deposition to support his contention. These pages, however, have not been submitted to the Court. Regardless, UE does not contest Plaintiff's allegation that Zimmerman was laid off from his journeyman position at the time he was hired by UE as a building service mechanic.

*Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). All disputed facts are to be resolved, and all inferences are to be drawn, in favor of the nonmoving party. *Kopp v. Samaritan Health System, Inc.*, 13 F.3d 264, 269 (8th Cir.1993).

Summary judgment should seldom be used, however, in cases alleging employment discrimination. *Hardin v. Hussmann Corp.*, 45 F.3d 262, 264 (8th Cir.1995); *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994); *Johnson v. Minnesota Historical Society*, 931 F.2d 1239, 1244 (8th Cir.1991). Summary judgment is appropriate in employment discrimination cases only in those rare instances where there is no dispute of fact and where there exists only one conclusion. *Crawford*, 37 F.3d at 1341; *Johnson*, 931 F.2d at 1244; *Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989).

**B. *Failure to Promote.*** Plaintiff first argues that UE did not promote him to the building service mechanic position because of his race, in violation of Title VII and § 1981.

■ In order to establish a prima facie case that he was thus discriminated against, Plaintiff must satisfy the ubiquitous *McDonnell Douglas Corp. v. Green* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting framework.[5] *Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir.1996). He must show that (1) he is a member of a protected class; (2) he applied for and was qualified for promotion to an available position; (3) he was rejected; and (4) the promotion was given to another similarly situated individual who was not a member of a protected class. *Id. See also Lidge–Myrtil v. Deere Co.*, 49 F.3d 1308, 1310 (8th Cir.1995); *Favors v. Fisher* 13 F.3d 1235, 1237 (8th Cir.1994).

■ If Plaintiff establishes a prima facie case, UE then bears the burden of articulating a legitimate non-discriminatory reason for its failure to promote him. *See St.*

*Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If UE satisfies this burden, Plaintiff must show, in this summary judgment proceeding, that he has sufficient admissible evidence from which a rational factfinder could find that UE's proffered nondiscriminatory reason was either untrue or not the real reason, and that intentional discrimination was the real reason. *See Lang v. Star Herald*, 107 F.3d 1308, 1311–12 (8th Cir.1997). "[E]vidence of pretext will not by itself be enough to make a submissible case if it is, standing alone, inconsistent with a reasonable inference of [race] discrimination." *Ryther v. KARE 11*, 108 F.3d 832, 837 (8th Cir.1997) (en banc). *See also Ruby v. Springfield R–12 Public School Dist.*, 76 F.3d 909, 911–912 (8th Cir.1996).

UE argues that Plaintiff has failed to establish two of the necessary elements of a prima facie case, i.e., that he was qualified for the promotion and that the building service mechanic position was given instead to a similarly situated individual. Plaintiff argues that it was not necessary that he was working as a journeyman when he applied for the building service mechanic position because UE had waived that requirement for Caucasian males in previous years. Plaintiff contends, therefore, that the requirement was not a true requirement.

Plaintiff further argues that the journeyman qualification was waivable, pointing to the hiring of Zimmerman and Janis, both Caucasians, as building service mechanics although both were laid-off journeyman when hired by UE. Moreover, there is some evidence that Westoff, the person hired for the position sought by Plaintiff, may have been laid off at the time he was hired by UE. (Plf.'s Ex. 8.)

UE counters that it considers laid-off employees to still be employees who are subject to recall and are, therefore, presently working in a journeyman classification. (Pl.'s

---

5. It is undisputed that Plaintiff has not offered any direct evidence of discriminatory intent to support his claim. *See Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1331 (8th Cir.1996) (plaintiff who can not satisfy burden of proving intentional discrimination by direct evidence must establish prima facie case using *McDonnell Douglas* framework).

Ex. 8; Armistead Dep. at 32–37.)[6] UE so informed Plaintiff. Thus, UE contends, it has not waived the currently-working-journeyman requirement. This contention is supported by the uncontested fact that UE rejected thirty of the fifty applicants for the building service mechanic position because they were then working as a journeyman. (*See* Def.'s.'s Ex. "I".) Twelve of these thirty were Caucasians; eighteen were African–America. (*Id.*) The person eventually hired by UE did, according to UE's interpretation of its own policy and practice, "currently" work as a journeyman and was not, therefore, similarly situated to Plaintiff or to the twenty-nine other UE employees who were not promoted.

■■■■ The Court finds that Plaintiff was not qualified for the building service mechanic position because, at a minimum, he did not satisfy the criterion that he be currently working as a journeyman. *See Shannon,* 72 F.3d at 682 (plaintiff whose name had been removed from waiting list for promotion because she had accepted an apprenticeship failed to establish prima facie case of discrimination); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995) (plaintiff who lacked qualifications of man given position she sought failed to establish second and third elements of prima facie case). Plaintiff has offered no evidence to rebut UE's assertion that the currently-working-journeyman criterion was consistently applied, and, although he disputes whether laid-off journeyman should be considered to be "currently-working" and whether the "currently-working" requirement has a rational basis, such a construction and requirement are business judgments that are not within the province of this Court to second-guess. *See Lidge–Myrtil,* 49 F.3d at 1312. Moreover, an employer's business decision about who to promote or hire need not be a good decision to withstand a challenge for race discrimination; "it is enough that it not be motivated by the [race] of the employee who is adversely affected by the decision."

*Brandt v. Shop 'n Save,* 108 F.3d 935, 938 (8th Cir.1997).

■■■■ Plaintiff reaches back in time to establish a prima facie case, citing the hiring of Zimmerman and Janis. Both Zimmerman and Janis were laid-off from their positions as journeymen for other employers when hired by UE. Again, they were considered as being currently employed according to UE policy. Plaintiff, on the other hand, was working for UE in a non-journeyman position. *See McLaughlin,* 50 F.3d at 511–512. Moreover, although instances of disparate treatment can support a claim of pretext, the plaintiff has the burden of proving that he and the disparately treated Caucasians were "similarly situated in all relevant respects." *See Harvey v. Anheuser–Busch,* 38 F.3d 968, 972 (8th Cir.1994); *Jones v. Frank,* 973 F.2d 673, 676 (8th Cir.1992). Plaintiff and Zimmerman and Janis were not similarly situated.

■■■■ Plaintiff further argues that a discriminatory intent may be inferred by UE changing its alleged legitimate non-discriminatory reason for denying him a promotion, wavering back and forth on whether Plaintiff was disqualified because of course work deficiencies or because of the journeyman deficiency. " [S]ubstantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext." ' *Hossaini v. Western Missouri Medical Center,* 97 F.3d 1085, 1089 (8th Cir.1996) (quoting *Kobrin v. University of Minn.,* 34 F.3d 698, 703 (8th Cir.1994)).

Plaintiff mischaracterizes UE's position. It is undisputed that Plaintiff did not satisfy one of the advertised qualifications for the building service mechanic position because he was not currently working as a journeyman. Management personnel at UE consistently informed Plaintiff that he was not qualified for the position because of this deficiency. (*See* Pl.'s.'s Ex. 5, 7, and 8.) Moreover, although Plaintiff's course work may also have disqualified him, the undisputed evidence is that Plaintiff was disqualified by UE because

---

**6.** Since neither party provided the Court with the full Armistead deposition, the Court must rely upon the excerpts cited by Plaintiff in his memo- randum filed in opposition to the instant motion. UE does not contest the accuracy of these quotes.

he was not currently working as a journeyman, as were twenty-nine other current UE employees. (Def.'s Ex. "I"; Pl.'s.'s Ex. 5.) The evidence also establishes that UE managers were supportive of Plaintiff and were evaluating his qualifications for the promotion by reviewing whether he had the necessary course requirements. UE's position is not a "lawyer's afterthought," *see Thomas v. Runyon,* 108 F.3d 957, 959 (8th Cir. 1997), and is not indicative of a fortuitously shifting justification for a discriminatory act.

■ "Title VII requires employers to treat employees who are members of protected classes the same as other similarly situated employees, but it does not create substantive rights to preferential treatment." *Lang,* 107 F.3d at 1312 (citing 42 U.S.C. § 2000e–2(j)). Plaintiff was treated the same as the other twenty-nine UE employees who bid on the building service mechanic position and who were not currently working as journeymen.

■ Because Plaintiff has failed to establish a Title VII claim, his § 1981 claim, based on the same factual basis, must also fail. *See Lidge–Myrtil,* 49 F.3d at 1312.

**C. Hostile Work Environment.** The only evidence presented by Plaintiff relating to a hostile work environment comes from Plaintiff's deposition in which he alleges that a supervisor for UE made a racially derogatory comment and told a racially derogatory joke. Plaintiff admits that he did not hear the comments or the joke firsthand nor did those comments affect his job or job performance. The supervisor who allegedly made these comments gave Plaintiff good evaluations. Plaintiff's immediate supervisor is an African–American.

■ Plaintiff did not include his claim of a hostile work environment in his EEOC charge.[7] (Def.'s Exs. "M" and "P".) Title VII mandates that a complainant file his or her charge with the EEOC within three hundred days of the discriminatory act. 42 U.S.C. § 2000e–5(e)(1). "Exhaustion of administrative remedies is central to Title VI's statutory scheme because it provides the EEOC the fast opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 222 (8th Cir.1994) (citing *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)). To exhaust this administrative remedy, the claimant must: "1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge; and 2) receive notice of the right to sue." d. (citing 42 U.S.C. § 2000e–5(b)(c)(e)). Although an EEOC charge is to be read liberally, " '[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Id.* at 223 (quoting *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 863 (7th Cir.1985)). "A plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like are reasonably related to the substance of charges timely brought before the EEOC." *Id.* at 222.

■ For a claim of hostile work environment "[t]o be properly exhausted [it] must be separately raised in the administrative charge, because it is not reasonably related to a claim of discrete act of discrimination, such as demotion." *Gipson v. KAS Snacktime Co.,* 83 F.3d 225, 229 (8th Cir. 1996). Plaintiff has failed to exhaust his

---

**7.** Plaintiff's EEOC charge reads as follows:
My racial identity is black. I have worked for the above-named employer since November, 1992. My present job is janitor. In July, 1993, I applied for a promotion to maintenance mechanic. On or about August 10, 1993, a notice was posted that no employee who had applied for the job met its qualifications. The job was awarded to a white applicant from outside the employer.

As a result of my on-going union grievance, I have found that the reason the employer gave for not promoting me was that I did not have two years of experience as a journeyman maintenance mechanic.
I believe that my race, black, was a factor in denying me the promotion. (Def.'s Ex. "P".)

administrative remedies on his claim of a racially hostile workplace.

Moreover, even if Plaintiff had done so, his claim would fail.

In order to prevail on his claim, Plaintiff must establish that (1) he belongs to a protected group; (2) he was subject to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) UE knew or should have known of the harassment and failed to take proper remedial action. *See Callanan v. Runyun,* 75 F.3d 1293, 1296 (8th Cir.1996). Summary judgment in such a claim is appropriate when a plaintiff has failed to show that "under the totality of the circumstances that the harassing conduct was 'so severe or pervasive that it create[d] an abusive working environment.'" *Id.* (quoting *Burns v. McGregor Elec. Industries, Inc.,* 955 F.2d 559, 564 (8th cir.1992)). *See also Gipson,* 83 F.3d at 229 (describing a hostile work environment as "an ongoing nightmare for the employee victim"). The totality of the circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). *See also Stacks v. Southwestern Bell Yellow Pages. Inc.,* 27 F.3d 1316, 1327 (8th Cir.1994). Moreover, an employee must establish that his or her employer "created or condoned the continuing existence of a work environment that significantly and adversely affects the psychological well-being of an employee because of the employee's race." *Ways v. City of Lincoln,* 871 F.2d 750, 754 (8th Cir.1989) (citations omitted). Mere isolated incidents fail to constitute a hostile work environment. *Id.*

Plaintiff has alleged only that his supervisor's supervisor made racially derogatory remarks and jokes to another employee. He has established that this same supervisor gave him good evaluations and that the comments did not affect the way he performed his job. These allegations are insufficient to create a genuine dispute of material fact.

### III. CONCLUSION

Plaintiff has failed to establish that a rational factfinder could find that he was not promoted to the building service mechanic position because of his race. He has also failed to establish that he has exhausted his necessary administrative remedies on his hostile work environment claim or that that claim has merit.

Accordingly,

**IT IS HEREBY ORDERED** that Union Electric Company's Motion for Summary Judgment [Doc. 18] is GRANTED.

**IT IS FURTHER ORDERED** that a separate judgment shall be entered in favor of Union Electric Company and against Lafayne Manse in the instant cause of action.